■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. PETER BUTLER and RICHARD CONROY, Appellants.— Judgment entered June 15, 1967, convicting defendant Peter Butler of the crime of murder in the first degree as a felony murder, affirmed. Determination withheld as to appeal from judgment similarly entered as to defendant Richard Conroy, and the matter remitted to the Supreme Court, New York County for an evidentiary and suppression hearing in accordance with *People* v. *Morhouse* (21 N Y 2d 66). In this case, at the beginning of the trial, the District Attorney declared that no evidence or leads had been obtained from wiretaps and that no wiretap evidence would be offered. Upon questioning by the Trial Judge, assurances were developed that the names of no witnesses had been thus obtained. And the Trial Judge, finding that the supporting affidavits were adequate in respect of probable cause, denied the attorney for the defendants permission to examine the police, the order or the affidavits pursuant to which wiretap orders were obtained. On argument of this appeal, we requested production of the applying affidavits, the order, the resulting tapes and further briefs on the law and the facts. Upon this further submission, we have concluded that the representation of the District Attorney that no evidence or leads were obtained from the wiretaps cannot deprive the defendant Conroy of at least an opportunity to test whether certain concededly illegal taps led to information which was improperly used at the trial. (*People* v. *Munger*, 24 N Y 2d 445.) As for the court order dated June 28, 1966, resulting in wiretapping between June 29, 1966 and July 15, 1966, we feel there may be a bare sufficiency of facts, independent of the anonymous phone call, to establish a basis for the reliability of the information divulged by the masked informer and thus sustain this order and preserve it from the interdiction of *People* v. *Horowitz* (21 N Y 2d 55); (see, also, *People* v. *Hendricks*, 25 N Y 2d 129). However, even if this order was properly issued and used, there is still the concession of the District Attorney that the second wiretap, based on the affidavit of Lieutenant Sullivan, was patently invalid and that the wiretap operations of July 16, 17 and 18, 1966 were completely unauthorized. As to these latter wiretaps, a hearing is unavoidably in order, to determine whether they produced witnesses and evidentiary matter developed at the trial which stemmed from these extra-legal operations of the police and thus were inadmissible. Particularly, in fairness, there must be a hearing, because in point of chronology, the evidence that was educed at the trial, was clearly elicited, if not developed, only after the dates of these invalid wiretaps. The foregoing is not applicable or available to the defendant Butler because objection on constitutional grounds to the use of intercepted conversations obtained through eavesdropping devices is personal and limited to a party to the conversation or whose premises are involved. (See *Alderman* v. *United States*, 394 U. S. 165; *Matter of Selig*, 32 A D 2d 213.) Further, in refusing to grant a new trial in the case of Butler, we are not unaware of the pertinency of *People* v. *Rosario* (9 N Y 2d 286). We note that at the outset of the trial, the District Attorney made no secret of his possession of certain tapes. But we feel the *Rosario* rule was not transgressed because we perceive no inconsistency between the actual testimony of the witness Richardson on the stand and what she purportedly said in the tapes; the tapes, strictly speaking, did not relate to the subject of

her testimony; and their only possible use would have been for the purpose of cumulatively indicating bias. We note further the Court of Appeals in *Rosario,* notwithstanding its rationale, refused to upset the conviction. Said the court (p. 291) : " This court is exceeding slow to disregard error as harmless under section 542 of the Code of Criminal Procedure, particularly in a capital case. However, in the one before us, we are as convinced as judges may ever be, in view of the overwhelming proof of guilt and the absence of any real inconsistency between prior statement and trial testimony, that the jury would not have decided the case differently even if defense counsel had had the use of the statements in question. In other words, it may not be said that any substantial right of the appellant was prejudiced by the trial court's erroneous ruling. The judgment of conviction should be affirmed." We think that in the case of Butler, we can do no other. He was the actual malefactor. He fired the gun. The evidence against him is so conclusive it is not susceptible of disturbance by any cumulative proof of bias on the part of the witness Richardson. No material fact tending to establish the crime by Butler is affected by the denial of an opportunity, even if erroneous, to the Butler defense of an evaluation of the Richardson tapes before her testimony, a point not challenged in the briefs of Butler's attorney. Accordingly, we would follow the *Rosario* result, hold the claimed error harmless in the presence of overwhelming guilt, and affirm the conviction of the defendant Butler. Concur — Eager, J. P., McGivern and Steuer, JJ.; Capozzoli, J., dissents in part in the following memorandum : I agree with the conclusion of the majority that the determination of the appeal of the defendant, Conroy, be withheld and the matter remitted to the Supreme Court, New York County, for a hearing. I disagree, however, that the conviction of defendant, Butler, be affirmed. The determination of Butler's appeal should also be held in abeyance, not for the reasons which govern the court's conclusion as to the defendant, Conroy, but for the fact that the People have clearly violated the rule of *People* v. *Rosario* (9 N Y 2d 286) and *Jencks* v. *United States* (353 U. S. 657). I agree with the majority that the defendant, Butler, has no standing to challenge the action of the People in tapping the Conroy telephone. However, a reading of the affidavit of Lawrence K. Feitell, of counsel for the defendant, Conroy, which affidavit was executed after having heard the tapes relating to the wiretapping, discloses the following : " The tapes further disclose Richardson's participation in a conspiracy with Conroy to perjure herself in a forgery trial in which Conroy was a defendant (Tapes, 2, E). Additional statements in her conversations reveal intense hatred for Butler, shared with her by Conroy and their desire to frame Butler at his trial or to have him killed on his release from jail (Tapes 8; B, E)". Then we find, in the same affidavit, a conclusion with which I agree, to wit : " (Had these latter tapes been made available to counsel for Butler during the trial under the *Rosario* rule, their usefulness as vehicles to impeach Richardson could not be doubted) ". After the Feitell affidavit was served upon the District Attorney's office the People filed an answering affidavit in which they do not deny the above, but merely present arguments as to why *People* v. *Rosario* (*supra*) does not apply. In *Jencks* v. *United States* (*supra,* p. 669) the court said : " Relevancy and materiality for the purposes of production and inspection, with a view to use on cross-examination, are established when the reports are shown to relate to the testimony of the witness. Only after inspection of the reports by the accused, must the trial judge determine admissibility ". In *People* v. *Rosario* (*supra,* p. 289) the court said : " A pretrial statement of a witness for the prosecution is valuable not just as a source of contradictions with which to confront him and discredit his trial testimony. Even statements seemingly in harmony.

with such testimony may contain matter which will prove helpful on cross-examination. They may reflect a witness' bias, for instance, or otherwise supply the defendant with knowledge essential to the neutralization of the damaging testimony of the witness which might, perhaps, turn the scales in his favor." The witness, hereinabove referred to as Richardson, is one, Lynn Ann Richardson, who gave testimony at the trial concerning certain admissions allegedly made to her by the defendant, Butler, with reference to his participation in the killing. An examination of her testimony discloses that the defendant, Butler, allegedly told her that he and the codefendant, Conroy, were walking in the park and that he [Butler] wanted to roll someone and that a man came out of nowhere and approached Butler; that Butler drew a gun on the man. "Q. What happened then, according to Peter Butler? A. Richard Conroy was not in sight, and the man and Peter began to struggle, and the gun went off". Upon the completion of her direct testimony counsel for Butler addressed the court as follows: "Your Honor, at this time I ask for all prior statements made by this witness, if any, and the Grand Jury testimony, if there be any." The court granted this request and the People thereupon produced the transcribed testimony of the witness, Richardson, before the Grand Jury and certain pages from the note-books of Detectives Ferguson and Ferris. The District Attorney then said: "Those are the prior statements." Nothing was said by the People concerning the fact that they had in their possession statements of the witness, Richardson, recorded on tapes during the tapping of Conroy's telephone, to which reference has hereinabove been made and, of course, counsel was not given an opportunity to examine them. When one considers that the testimony of the witness, Richardson, at the trial tended to indicate that the defendant, Butler, was alone responsible for the actual killing because Richard Conroy was not in sight, it became very important to cross-examine her on the basis of the overheard telephone conversations which took place between her and the defendant, Conroy, during which she expressed her bitter hatred of Butler and her willingness to frame him or see him killed. While the majority agrees that the *Rosario* rule is applicable, it notes that the "rule was not transgressed because we perceive no inconsistency between the actual testimony of the witness, Richardson, on the stand and what she purportedly said in the tapes". Whether or not the court sees any inconsistency is immaterial. It is the duty of the Trial Judge to direct the District Attorney to turn over any statements in the latter's possession, made by any witness who testifies at the trial. That is exactly what *People* v. *Rosario* held and that is so, irrespective of whether there is or is not any inconsistency. The majority further contends that, in any event, the conviction of Butler should be affirmed under section 542 of the Code of Criminal Procedure because the evidence against him "is so conclusive it is not susceptible of disturbance by any cumulative proof of bias on the part of the witness, Richardson". It believes that Butler's guilt has been overwhelmingly established and, therefore, embraces the reasoning of the court in *Rosario* whereby section 542 was applied to that case on the basis of the evidence adduced there. I cannot understand the comparison of the proof in Rosario with the proof in the case at bar. In *Rosario*, in summarizing the proof against that defendant, the court said (p. 288): "One of the three, Basilio Otero, was an eyewitness to the robbery. He had been about to leave the restaurant when the appellant, gun in hand, ordered him to the rear of the shop and into the lavatory; at the same time, he saw the other two defendants (who had been with the appellant) push the proprietor toward the rear. From behind the closed door, he heard a

shot and, after a few minutes, came out to find the robbers gone. The second witness was Josephine Rodriguez, a girl friend of one of the other defendants; it was she to whom the appellant gave his gun after the robbery, informing her that he and the others had held up a man in a restaurant, taken $75 from him and 'shot him' when he refused to give them more. The third witness was the appellant's own girl friend, Jane Thompson, and to her the appellant admitted the 'shooting', stating that 'we had three guns and we shot together'." Furthermore, in *Rosario*, there was also proof of a confession to the District Attorney, evidence of flight and ballistics testimony indicating that the lethal bullet had been fired from Rosario's gun. All of this led the Court of Appeals to hold that because of "the overwhelming proof" in the record before it "there can be no possible question of the appellant's guilt" (p. 291). Now, what about the evidence in the case at bar? There are no eyewitnesses to the murder. There is no confession to the District Attorney, or to the police by either defendant. No gun was ever recovered and there was no ballistics testimony. The only evidence against the defendants came by way of alleged admissions made by one or both of the defendants, at different times, to different persons who testified at the trial. The record discloses that these witnesses, in the main, were of unsavory character, e.g., a convicted prostitute, another who was an accessory after the fact and who admitted he was promised immunity and still another who had a criminal record. Can it seriously be contended that the proof in the case at bar is of the same weight and conviction as the proof in the case of *Rosario*? With great deference to the majority I do not believe so. For the above reasons I am of the opinion that we should withhold the determination of Butler's appeal pending a hearing at Trial Term as to whether the failure of the District Attorney to turn over to counsel for Butler the tapes in question, deprived this defendant of any substantial right which may entitle him to a new trial.