■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DANIEL KRAMER, Defendant, and HERVE FILION, DARRON RYDER, DAVID INGRAHAM and FREDERICK GRANT, Respondents. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH ASCENZIO, THOMAS BRUNO, PATSY CAPOLONGO, ALPHONSE CUZZO, PAUL CUZZO, JOSEPH DANIELLO, ROBERT DANIELLO and STEVEN MULLER, Respondents, et al., Defendants. [664 NYS2d 81] —Appeal by the People in two related actions, as limited by their brief, from (1) so much of an order of the County Court, Westchester County (Lange, J.), entered August 1, 1996, as determined that the defendants possessed standing to challenge two pen register orders and to seek suppression of wiretap evidence obtained as a result of an eavesdropping warrant, (2) an amended order of the same court, entered August 13, 1996, which adhered to the prior determination that the defendants possessed standing, and granted the motions of the defendants Herve Filion, David Ingraham, and Frederick Grant to dismiss counts 3, 16, 23, 27, and 30 of Westchester County Indictment No. 95-01850, which charged them with the crimes of grand larceny and conspiracy to commit grand larceny, and (3) an order of the same court, entered September 10, 1996, which granted the defendants' motion to suppress all of the evidence derived from the subject pen register orders and eavesdropping warrant.

Ordered that the appeals from so much of the orders as concerned the defendant Stephen Muller are dismissed as withdrawn; and it is further,

Ordered that the appeal from the order entered August 1, 1996, is dismissed, as that order was superseded by the amended order entered August 13, 1996; and it is further,

Ordered that the appeal from so much of the amended order entered August 13, 1996, as determined that the defendants possessed standing to challenge the pen register orders and to seek suppression of wiretap evidence obtained as a result of an eavesdropping warrant is dismissed; and it is further,

Ordered that the amended order entered August 13, 1996, is reversed insofar as reviewed, and counts 3, 16, 23, 27, and 30 of Westchester County Indictment No. 95-01850 are reinstated; and it is further,

Ordered that the order entered September 10, 1996, is reversed, on the law, and the defendants' motion to suppress evidence derived from the subject pen register orders and eavesdropping warrant is denied.

Although no appeal lies from so much of the amended order entered August 13, 1996, that determined that the defendants possessed standing to challenge two pen register orders and to seek suppression of wiretap evidence obtained as a result of an eavesdropping warrant, the issue of standing is brought up for review by the appeal from the order entered September 10, 1996, which suppressed all evidence derived from the subject orders and warrant (see, CPL 450.20 [8]).

In January 1995 two orders were issued authorizing the installation and use of pen register devices on four telephones located in the residence of the defendant Daniel Kramer, who was allegedly running a bookmaking operation. As a result of evidence obtained through the use of the pen registers, an eavesdropping warrant was issued in March 1995, which permitted electronic surveillance of the telephone lines located in Kramer's home and office, and of a cellular telephone and pager he used. The intercepted conversations enabled the People to develop evidence of both illegal gambling operations and a scheme to fix certain harness races at Yonkers Raceway. In August 1995 search warrants were executed at alleged "wirerooms" at various locations in New York City and Westchester County, and extensive bookmaking and gambling records as well as more than $3,500,000 in cash were seized.

By Westchester County Indictment No. 95-01850, Kramer and four harness racing drivers were indicted in connection with the scheme to fix races at Yonkers Raceway. The indictment charged the defendants with various counts of grand larceny and conspiracy to commit grand larceny, and with numerous counts of tampering with a sports contest. Another indictment charged conspiracy to promote gambling in the first degree and various substantive gambling offenses, for their participation in the illegal gambling operation which was the ⸱ʳᵢₙₐₗ subiect of this investigation

The defendants in the race-fixing indictment subsequently moved, *inter alia,* to dismiss those counts of the indictment charging grand larceny and conspiracy to commit grand larceny. In addition, the defendants in both the gambling and race-fixing indictments jointly moved to suppress all evidence derived from the pen registers inside the Kramer residence, contending that the pen register devices installed in the premises did not comply with *People v Bialostok* (80 NY2d 738) because they had the capacity to function as eavesdropping devices.

By an amended order entered August 13, 1996, the County Court dismissed the counts charging grand larceny and conspiracy to commit grand larceny from the indictment filed against the harness racing drivers, concluding that their alleged conduct did not meet the statutory criteria to establish a larceny. Moreover, although the People argued that only Kramer had standing to challenge the installation of the pen register devices in his home, the court ruled that all of the defendants possessed standing to seek suppression because they were all targets of investigation. The court thereafter granted the defendants' suppression motion upon the ground that the pen register devices were eavesdropping devices which required the issuance of an eavesdropping warrant. Kramer, who pleaded guilty to one count of criminal possession of gambling records in the first degree, and one count of tampering with a sports contest, is not a party to this appeal.

On appeal, the People contend that the County Court erred in concluding that the defendants had standing to contest the implementation of pen register orders in Kramer's home. We agree. Under New York State law, only an "aggrieved" person has standing to challenge the validity of a wiretap (CPL 710.20; *United States v Fury,* 554 F2d 522, 525, *cert denied sub nom. Quinn v United States,* 433 US 910). An aggrieved person is either one who has had his conversations intercepted during the wiretap, or a person against whom the wiretap was directed (*see,* CPL 710.10 [5]; *United States v Fury, supra; People v Geraghty,* 212 AD2d 358; *People v Marans,* 127 AD2d 795). Here, the record demonstrates that the sole target of the pen register orders was Kramer. The remaining defendants were not identified or referred to in the papers submitted in support of the orders. Moreover, the defendants have no derivative right to challenge the propriety of the prior pen register orders from which information was obtained providing probable cause for the subsequent eavesdropping order (*see, People v Geraghty, supra; People v Varacalli,* 154 Misc 2d 805, 808). Accordingly,

the defendants lacked standing to contest the use of the pen registers in the codefendant Kramer's residence, and the County Court's order suppressing all evidence derived from the pen register orders and subsequent eavesdropping warrant must be reversed.

We further find that those counts of Westchester County Indictment No. 95-01850 which charged the harness driver defendants with grand larceny and conspiracy to commit grand larceny should be reinstated. The subject counts of the indictment were premised on the theory that the defendant drivers committed larceny by false promise by stealing money from those members of the betting public who had wagered on the horses they drove in fixed races. Although the People's theory is a novel one, Penal Law § 155.05 (2), which defines larceny, "should be broadly interpreted to carry out the legislative intent" (*People v Foster*, 73 NY2d 596, 604). Pursuant to Penal Law § 155.05 (2) (d), a person commits larceny by false promise "when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct". Since the defendant drivers obtained property from the betting public based upon an implied representation that they would use their best efforts to win the fixed races, which they allegedly had no intention of keeping, the defendants' conduct can be viewed as a form of larceny. Moreover, there is no statutory requirement that the defendants be the exclusive beneficiaries of the larcenous scheme, and thus the fact that the codefendant Kramer was not the only winning bettor does not require dismissal of the larceny counts. Copertino, J. P., Friedmann, Krausman and Goldstein, JJ., concur.