*648
 
 OPINION OF THE COURT
 

 Smith, J.
 

 In
 
 People v Bialostok
 
 (80 NY2d 738), this Court held that a pen register device capable of being adapted to monitor telephone conversations should be treated as an eavesdropping device subject to the probable cause requirements of article 700 of the New York Criminal Procedure Law.
 
 [1]
 
 The issue on this appeal is whether
 
 Bialostok
 
 should be applied retroactively, so as to govern all pen register surveillance, including the one involved on this appeal, conducted by members of law enforcement in this State prior to the issuance of the
 
 Bialostok
 
 ruling. We conclude that it should not, and accordingly affirm.
 

 In October 1993, defendant Paul Martello, an officer of Plumbers Local Union No. 2, was charged, along with nine other individuals, in a 183-count indictment with enterprise corruption (Penal Law § 460.20), coercion (Penal Law § 135.65) and related crimes. Following a jury trial, defendant was convicted of one count of attempted coercion in the first degree (Penal Law §§ 110.00, 135.65 [1]) and one count of criminal mischief in the second degree (Penal Law § 145.10). He was thereafter sentenced to serve two concurrent terms of IV2 to 4V2 years imprisonment and to pay a $5,000 fine.
 

 In large part, the People’s evidence against defendant at trial was derived from the government’s electronic telephonic eavesdropping, which had, over a period of many months, targeted defendant, defendant’s father and others. The
 
 *649
 
 government’s numerous applications for the eavesdropping warrants were supported by information gained from the government’s prior pen register surveillance. That surveillance — which had been commenced as part of the criminal investigation in 1990 and continued throughout 1992 — was authorized by warrants issued pursuant to CPL 705.10. The surveillance was concluded before
 
 Bialostok
 
 was decided, on February 25, 1993.
 

 Prior to his 1993 trial, defendant moved to suppress all evidence obtained through the government’s use of electronic eavesdropping, claiming that the numerous eavesdropping warrants issued throughout the criminal investigation were inextricably linked to information obtained through the government’s use of pen register devices capable of monitoring the contents of telephone conversations — a point the People did not dispute.
 
 [2]
 
 Relying on
 
 Bialostok,
 
 defendant claimed that because the pen register devices used in his case were undisputedly capable of monitoring the contents of telephone conversations, they must be treated as eavesdropping devices, and were subject not to the “reasonable suspicion” standard of CPL 705.10, but to the more stringent probable cause requirements of CPL 700.15 and the Fourth Amendment of the United States Constitution. The People opposed defendant’s motion, arguing that
 
 Bialostok
 
 should be limited to its facts due to the 1988 passage of CPL article 705, and that suppression should be denied as a result of law enforcement’s undisputed compliance in this case with the dictates of that now governing body of legislation. Alternatively, the People argued that the
 
 Bialostok
 
 rule should not be applied retroactively so as to affect the pen register orders and electronic eavesdropping warrants at issue here.
 

 Supreme Court denied suppression of the People’s eavesdropping evidence (168 Misc 2d 408,
 
 sub nom. People v Salzarulo).
 
 Although the court expressly rejected the People’s primary argument that
 
 Bialostok
 
 should be limited to its own facts (see,
 
 id.,
 
 at 411, n 1), it thereafter accepted the People’s alternative contention that
 
 Bialostok
 
 should be applied prospectively only, rendering it inapplicable to defendant’s case (see,
 
 id.,
 
 at 413-416). A unanimous Appellate Division affirmed, concluding that
 
 Bialostok
 
 “should be applied prospec
 
 *650
 
 lively only and does not apply to the pen register orders or electronic eavesdropping warrants in this case, all of which were issued and/or extended prior to the date of the
 
 Bialostok
 
 decision” (251 AD2d 187). The Appellate Division agreed with Supreme Court that, as a case interpreting New York State statutory law and formulating a new rule,
 
 Bialostok
 
 is subject to this State’s flexible approach to the issue of retroactivity, rather than to the Federal rule of automatic retroactivity applicable to pending cases.
 

 If no Federal constitutional principles are involved, the question of retroactivity is one of State law (see,
 
 American Trucking Assns. v Smith,
 
 496 US 167, 177, citing
 
 Great N. Ry. Co. v Sunburst Oil & Ref. Co.,
 
 287 US 358, 364;
 
 People v Mitchell,
 
 80 NY2d 519, 526). Under defendant’s view of the issue,
 
 Bialostok
 
 is grounded upon this Court’s interpretation of the requirements of the Fourth Amendment and the issue should be resolved in favor of retroactivity pursuant to the automatic retroactivity rule under
 
 Griffith v Kentucky
 
 (479 US 314 [new constitutional rule applies retroactively to all cases pending on direct review]). The People, on the other hand, contend that
 
 Bialostok
 
 is based entirely on New York State law, and that the issue of retroactivity is to be resolved by application of this State’s
 
 Pepper-Mitchell
 
 tripartite test
 
 (see, People v Pepper,
 
 53 NY2d 213, 220,
 
 cert denied
 
 454 US 967;
 
 People v Mitchell,
 
 80 NY2d 519, 525-526,
 
 supra; see also, People v Favor,
 
 82 NY2d 254). We agree with the People.
 

 In
 
 Bialostok,
 
 we addressed the issue of “whether a pen register having the additional capacity to monitor conversations should be treated as an eavesdropping device under the Criminal Procedure Law and therefore permitted only when a Magistrate has issued a warrant based on probable cause” (80 NY2d,
 
 supra,
 
 at 742). In commencing our analysis of the issue, we noted that “[b]oth the United States Supreme Court and this Court have found that use of the traditional pen register does not raise constitutional concerns”
 
 (id.,
 
 at 744, citing
 
 Smith v Maryland,
 
 442 US 735;
 
 see also, People v Guerra,
 
 65 NY2d 60). We thereafter rejected the People’s argument in
 
 Bialostok
 
 that, since the audio function of the pen register was disabled and no conversations actually overheard, no warrant was required. We stated conclusively that “[t]he issue [in the case was] not the reasonableness of the search but statutory compliance”
 
 (id.,
 
 at 744).
 

 Our analysis in
 
 Bialostok
 
 additionally placed emphasis on “the broad legislative intent of [CPL] article 700 to safeguard
 
 *651
 
 individual privacy and [on] the potential for abuse embodied in the technology [of audio-capable pen register devices]”
 
 (id.,
 
 at 745). While we noted that any interpretation of CPL article 700 “ ‘must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect’ ”
 
 (id.,
 
 quoting
 
 People v Washington,
 
 46 NY2d 116, 121;
 
 see,
 
 US Const 4th, 14th Amends; NY Const, art I, § 12), our analysis of the issue was limited to the privacy protection then afforded pursuant to the provisions of article 700 of the CPL.
 

 Because the ruling in
 
 Bialostok
 
 emanates from our interpretation of the provisions of CPL article 700, and thus constitutes a New York State rule of law, the dispositive issue here is the application of this State’s
 
 Pepper-Mitchell
 
 factors
 
 (see, People v Pepper,
 
 53 NY2d,
 
 supra,
 
 at 220,
 
 cert denied
 
 454 US 967;
 
 People v Mitchell,
 
 80 NY2d,
 
 supra,
 
 at 525-526). As a threshold matter, however, we must determine whether the
 
 Bialostok
 
 case itself established a new rule of law in this State or, in the alternative, merely “applie[d] previously established principles in a new factual setting or settle [d] a question in a manner that was clearly foreshadowed”
 
 (People v Favor,
 
 82 NY2d,
 
 supra,
 
 at 263).
 

 Bialostok
 
 represented a new rule in this State, thus requiring retroactivity analysis under the
 
 Pepper-Mitchell
 
 factors. That decision for the first time placed pen registers having audio capabilities, even where it is undisputed that such capabilities were never used, under article 700 of the New York Criminal Procedure Law, which had theretofore dealt exclusively with eavesdropping surveillance. By holding audio-capable pen registers subject to the probable cause requirements of the New York State statutory scheme (CPL 700.15) for the first time, our ruling in
 
 Bialostok
 
 “ ‘represented a dramatic shift away from customary and established procedure’ ”
 
 (People v Favor,
 
 82 NY2d,
 
 supra,
 
 at 263, quoting
 
 People v Mitchell,
 
 80 NY2d,
 
 supra,
 
 at 525). Thus, contrary to defendant’s contention,
 
 Bialostok
 
 broke new legal ground in this State and established a “new” rule of law.
 

 Whether a new rule of New York State law is to be given retroactive effect requires an evaluation of three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application
 
 (People v Pepper,
 
 53 NY2d,
 
 supra,
 
 at 220;
 
 People v Mitchell,
 
 80 NY2d,
 
 supra,
 
 at 525-526;
 
 see also, People v Favor,
 
 82 NY2d 254,
 
 supra; People v Morales,
 
 37 NY2d 262, 268-269). Considering the above three factors, the
 
 Bialostok
 
 rule should be applied only prospectively.
 

 
 *652
 
 First, the purpose of the rule is unrelated to the fact-finding process and, in that respect, in no way affects the determination of guilt or innocence. Instead, as a statutory rule of exclusion (where no warrant has been obtained in compliance with the dictates of CPL art 700), the rule is intended to serve as a deterrent to the government’s ability to engage in unauthorized electronic eavesdropping, and, therefore, has little or no relation to the reliability of the pen register evidence seized. Second, as Supreme Court properly concluded in this case (168 Misc 2d,
 
 supra,
 
 at 416), it is undeniable that, prior to
 
 Bialostok,
 
 law enforcement authorities conducting pen register surveillance in this State relied extensively on this State’s previous rule of law that no warrant based upon probable cause was required in conducting pen register surveillance.
 

 Finally, in light of the extent of reliance by law enforcement on the
 
 pre-Bialostok
 
 rule in this State, retroactive application of the rule would work a substantial burden on the administration of justice and could affect a large number of cases currently pending on this State’s trial and appellate court dockets. Moreover, retroactive application would in no way serve as a deterrent to any improper practice by law enforcement and would similarly have no beneficial effect upon the integrity of the truth-seeking process. Thus, the
 
 Bialostok
 
 rule should he applied only prospectively.
 

 We also agree with the People that
 
 Bialostok
 
 is not controlling upon the facts and circumstances of this case due to the December 22, 1988 effective date of CPL article 705. While our opinion in
 
 Bialostok
 
 did reference the then newly enacted CPL article 705 (Pen Registers and Trap and Trace Devices [L 1988, ch 744, § 21]), the analysis did not incorporate any of the provisions of that article since it went into effect after the time of Bialostok's operative facts
 
 (see, People v Bialostok,
 
 80 NY2d,
 
 supra,
 
 at 743). Thus, we had no occasion in that case to apply the provisions of CPL article 705, or to harmonize that legislation’s governing effect upon the proper analysis of future pen register cases. Here, significantly, although the facts at issue occurred prior to our 1993 ruling in
 
 Bialostok,
 
 they occurred subsequent to the 1988 effective date of CPL article 705. Thus, here, we address, for the first time, whether the rule announced in
 
 Bialostok
 
 should apply in a case where the pen register surveillance is undisputedly conducted in strict compliance with the legislative commands of CPL article 705.
 

 Although recently we held in
 
 People v Kramer
 
 (92 NY2d 529) — upon operative facts that had occurred throughout
 
 *653
 
 1995 — that the numerous defendants in the case had statutory standing to challenge the legality of the pen register/trap and trace orders, the issue of
 
 Bialostok
 
 applicability, insofar as being affected by the passage of CPL article 705, was not asserted by any of the parties before this Court. Thus,
 
 Kramer
 
 was simply an application of
 
 Bialostok.
 
 We had no occasion in that case to address the issue of whether a pen register adaptable for use as an eavesdropping device — but actually used only as a pen register — must, even after the effective date of CPL article 705, still be considered an eavesdropping device under
 
 Bialostok.
 
 That issue, by not having been raised in
 
 Kramer,
 
 jurisprudentially constrained this Court from reaching the question of CPL article 705’s statutory suppression regulation.
 

 After concluding only that the
 
 Kramer
 
 defendants had standing to challenge the numerous judicial orders obtained in those cases, we forewarned that our opinion in
 
 Bialostok
 
 had not created a per se rule that all pen registers with audio capability were equivalent to eavesdropping devices
 
 (see, id.,
 
 at 541). We then remitted the
 
 Kramer
 
 cases to the Appellate Division with instructions to that Court to “make a technology/fact-applied determination whether the pen register usage in [the] cases [had] tripped into or overlapped to probable cause eavesdropping status”
 
 (id.).
 
 We lastly directed the Appellate Division to review “any other issues raised but not yet ruled upon in the appeals to that court”
 
 (id.,
 
 at 542).
 

 Under CPL article 705, “pen register” is now defined to mean:
 

 “a device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached, but such term does not include any device used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business” (CPL 705.00 [1]).
 

 Notably, the statutory definition of “pen register” in CPL article 705 contains no exclusion for pen registers capable of being converted into eavesdropping devices but not used in that capacity. Instead, the only exclusion from the Criminal
 
 *654
 
 Procedure Law’s “pen register” definition is for a device “used by a provider or customer of a wire or electronic communication service” (CPL 705.00 [1]). Additionally, the same legislative enactment that created CPL article 705 also amended the definition of “eavesdropping” in CPL 700.05 (1) by explicitly excluding from that definition “the use of a pen register or trap and trace device when authorized pursuant to [CPL] article 705” (CPL 700.05 [1]; see, L 1988, ch 744, § 7). The concomitant result is that the CPL article 705 definition of “pen register,” combined with the operative effect of the Legislature’s express exclusion of pen registers from the CPL article 700 definition of “eavesdropping,” evinces a legislative intent to view all pen registers, including those readily adaptable as eavesdropping devices, as pen registers and not, as
 
 Bialostok
 
 held, as eavesdropping devices. •
 

 In the case at bar, defendant takes as a given the applicability of the
 
 Bialostok
 
 decision, arguing exclusively that the rule emanating from that case should be applied retroactively so as to affect the evidentiary rulings in this case. The People, in addition to opposing defendant’s theory of retroactivity, continue to assert that
 
 Bialostok
 
 does not govern here because the pen register surveillance at issue was conducted after the enactment of CPL article 705, and law enforcement’s compliance with the procedural mechanics of that article is undisputed.
 

 In sum,
 
 Bialostok
 
 emanated from this Court’s interpretation of New York State statutory law and should be applied only prospectively. Moreover,
 
 Bialostok
 
 is not controlling upon the facts and circumstances of this case. At the time of the use of the pen register devices at issue in
 
 Bialostok,
 
 there was no statute governing their use. Subsequently, the Legislature passed CPL article 705 authorizing a Judge to issue a pen register order based upon reasonable suspicion. Inasmuch as it is undisputed in this case that the procedures prescribed by CPL article 705 were strictly followed, suppression was properly denied.
 

 Defendant’s remaining contention is without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.
 

 [1]
 

 . A “pen register” is a device that records or decodes electronic or other impulses that identify the numbers dialed or otherwise transmitted on a telephone line (CPL 705.00 [1]). Under New York State law, no warrant based upon probable cause is required prior to the government’s use or installation of a pen register device. Instead, CPL 705.10 permits the government’s use or installation of a pen register upon the securing of a judicial order based on reasonable suspicion.
 

 [2]
 

 . No allegation was made by defendant — and none is made on this appeal — that the pen register devices used in this case were in fact ever used by the government to monitor the content of conversations.