■ The People of the State of New York, Appellant, v Daniel Kramer, Defendant, and Herve Filion, Darron Ryder, David Ingraham and Frederick Grant, Respondents. The People of the State of New York, Appellant, v Joseph Ascenzio, Thomas Bruno, Patsy Capolongo, Alphonse Cuzzo, Paul Cuzzo, Joseph Daniello, Robert Daniello and Steven Muller, Respondents, and Daniel Kramer and Hyman Levine, Defendants. [701 NYS2d 78] —Appeal by the People in two related actions, as limited by their brief, from (1) so much of an order of the County Court, Westchester County (Lange, J.), entered August 1, 1996, as determined that the defendants possessed standing to challenge two pen register orders and to seek suppression of wiretap evidence obtained as a result of an eavesdropping warrant, (2) an amended order of the same court, entered August 13, 1996, which adhered to the prior determination that the defendants possessed standing, and granted the motions of the defendants Herve Filion, David Ingraham, and Frederick Grant to dismiss counts 3, 16, 23, 27, and 30 of Westchester County Indictment No. 95-01850, which charged them with the crimes of grand larceny and conspiracy to commit grand larceny, and (3) an order of the same court, entered September 10, 1996, which granted the defendants' motion to suppress all of the evidence derived from the subject pen register orders and eavesdropping warrant. By decision and order dated November 10, 1997, this Court, *inter alia,* reversed the order entered September 10, 1996, and denied the defendants' motion to suppress evidence derived from the subject pen register orders and eavesdropping warrant. By order dated November 20, 1998, the Court of Appeals reversed the decision and order of this Court and remitted the matter to

this Court to "exercise its standard review of the facts, and make a technology/fact-applied determination whether the pen register usage in these cases tripped into or overlapped to probable cause eavesdropping warrant status", and to review "any other issues raised but not yet ruled upon" upon the appeals to the Appellate Division (*People v Kramer,* 92 NY2d 529, 541, 542). Justice Florio has been substituted for former Justice Copertino (*see,* 22 NYCRR 670.1 [c]).

Ordered that the appeals from so much of the orders as concerned the defendant Stephen Muller are dismissed as withdrawn; and it is further,

Ordered that the appeal from the order entered August 1, 1996, is dismissed, as that order was superseded by the amended order entered August 13, 1996; and it is further,

Ordered that the appeal from so much of the amended order entered August 13, 1996, as determined that the defendants possessed standing to challenge the pen register orders and to seek suppression of wiretap evidence obtained as a result of an eavesdropping warrant is dismissed; and it is further,

Ordered that the amended order entered August 13, 1996, is reversed insofar as reviewed, and counts 3, 16, 23, 27, and 30 of Westchester County Indictment No. 95-01850 are reinstated; and it is further,

Ordered that the order entered September 10, 1996, is reversed, on the law, and the defendants' motion to suppress evidence derived from the subject pen register orders and eavesdropping warrant is denied.

In January 1995, two orders were issued authorizing the installation of pen register devices on four telephone lines located in the residence of Daniel Kramer, who was allegedly running a bookmaking operation. The equipment installed pursuant to these orders consisted of intercept "slaves", which were placed on Kramer's telephone lines, and pen registers, also known as "dialed number recorders", which recorded the information transmitted by the slaves. Although the slaves had the capacity to intercept both digital and audio signals, when set in the digital mode, the slaves blocked audio signals from being transmitted to the pen registers. As a result of evidence developed through the use of the pen registers, an eavesdropping warrant was issued in March 1995, which permitted electronic surveillance of the telephone lines located in Kramer's home and office, and of a cellular telephone and pager he used. The instruments were then modified to begin recording conversations between Kramer and the defendants Joseph Ascenzio, Thomas Bruno, Alphonse Cuzzo, Paul Cuzzo, Joseph

Daniello, Robert Daniello, and Patsy Capolongo. The intercepted conversations enabled the People to develop evidence of both illegal gambling operations and a scheme to fix certain harness races at Yonkers Raceway, a scheme which involved several harness race drivers, including the defendant Frederick Grant.

The defendants jointly moved to suppress all pen register and wiretap evidence against them, and the County Court granted their motion. The County Court found that the pen register devices were the functional equivalent of eavesdropping devices under *People v Bialostok* (80 NY2d 738) because they had the capacity to intercept and record conversations, and that they therefore could not be properly installed without an eavesdropping warrant being issued upon a showing of probable cause. On appeal by the People, this Court reversed and denied the suppression motion concluding that those defendants who were not originally targets of the pen register orders, i.e., all defendants except Daniel Kramer (hereinafter the respondents), had no standing to contest the propriety of those orders (*see, People v Kramer,* 244 AD2d 426). However, the Court of Appeals reversed this Court's determination, holding that the fact that the respondents were not identified targets at the time the pen register orders issued should not deprive them of standing to challenge the legality of the methods used to acquire evidence against them (*see, People v Kramer,* 92 NY2d 529, *supra*). The Court of Appeals remitted the matter to this Court to "exercise its standard review of the facts, and make a technology/fact-applied determination whether the pen register usage in these cases tripped into or overlapped to probable cause eavesdropping warrant status", and to review any other issues raised but not yet ruled upon (*People v Kramer, supra*, at 541, 542).

On the prior appeal to this Court, one of the arguments expressly raised by the People was that the rationale of *People v Bialostok (supra)* should not be applied to pen register devices installed after December 22, 1988, the effective date of CPL article 705. This particular issue has recently been decided by the Court of Appeals in *People v Martello* (93 NY2d 645). In *Martello*, the Court of Appeals concluded that where pen register surveillance is conducted in strict compliance with the procedures prescribed by CPL article 705, *Bialostok*, which involved surveillance conducted at a time when there was no statute governing the use of pen registers, is not controlling.

As a general rule, "cases should be decided on the basis of the law as it exists at the time of the decision" (*People v Favor,*

82 NY2d 254, 263), and a case decided on direct appeal will receive the benefit, or detriment, of any decisional law pronounced before its judgment becomes final (*see, People v Morales,* 37 NY2d 262, 268). An exception to this rule exists where a "new" rule of law overrules established precedent and represents a dramatic shift away from customary and established procedure (*People v Favor, supra,* at 263; *see, People v Mitchell,* 80 NY2d 519, 525). Here, however, *Martello* merely clarified the issue of whether *Bialostok* applies to cases where pen register surveillance was conducted after the effective date of CPL article 705. It did not announce a new rule of law. Accordingly, *Martello* can be applied retroactively to the instant appeal, which was pending at the time *Martello* was decided. Applying the reasoning set forth in *Martello,* we find that the motion to suppress pen register and wire tap evidence should be denied because the pen register surveillance here was conducted in compliance with the statutory requirements of CPL article 705.

We note that, in the alternative, we would nevertheless deny suppression because the pen register devices utilized by the People in this case were not the functional equivalent of eavesdropping devices. In remitting this matter, the Court of Appeals noted that *Bialostok* should not be construed as a "per se template", requiring any audio-capable pen register to be classified as an eavesdropping device (*People v Kramer, supra,* at 541). Here, the record reveals that the slave devices installed on the telephone lines of the defendant Kramer, when set in the digital mode, blocked audio signals from being transmitted to the pen registers which recorded telephone numbers. Under these circumstances, "the digital and audio functions" of the equipment were sufficiently discrete, and the susceptibility for misuse sufficiently remote, to support a finding that the pen register usage in this case did not "trip" into "probable cause eavesdropping warrant status" (*People v Kramer, supra,* at 541). Friedmann, J. P., Krausman, Goldstein and Florio, JJ., concur.