■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT J. PALMERI, Appellant. [710 NYS2d 487] —Judgment unanimously affirmed. Memorandum: Defendants were convicted upon their pleas of guilty of various gambling-related offenses including, *inter alia,* multiple counts of promoting gambling in the first degree (Penal Law § 225.10 [1]). They were charged with such offenses after investigation and prosecution by the Organized Crime Task Force Division of the New York State Attorney General's Office (OCTF). Defendants contend that County Court erred in denying their motions to suppress evidence obtained by OCTF pursuant to electronic surveillance and search warrants, and they seek reduction of their sentences.

We reject the contention of defendants that evidence obtained by electronic surveillance should be suppressed based on an alleged violation of CPL 700.20 (2) (f) and 705.15 (2) (d). Pursuant to those sections, an application for an eavesdropping warrant or a pen register/trap and trace device order must set forth the facts concerning all previous applications known to the applicant involving any of the same persons or facilities specified in the present application. Defendants contend that the application was required to disclose prior electronic surveil-

lance utilized in connection with an investigation that ultimately resulted in defendants pleading guilty in 1995 to promoting gambling in the first degree. We disagree. In construing a similar Federal statute regarding disclosure of prior electronic surveillance (*see,* 18 USC § 2518 [1] [e]), the Court of Appeals for the Ninth Circuit wrote that the disclosure requirement "seeks to ensure that the judge receives a full and complete report with respect to previous interceptions and the extent of information obtained thereby so that he [or she] can decide whether there is need for the further interception sought and whether there is probable cause to believe that further interception would provide seizable evidence" (*United States v Turner,* 528 F2d 143, 153, *cert denied sub nom. Lewis v United States,* 423 US 996). Here, the prior surveillance was not relevant to a determination regarding the need for electronic surveillance in connection with the present investigation. We further reject the contention of defendants that the People violated CPL 700.70 by failing to provide them with a copy of the pen register/trap and trace device orders and applications therefor. That section applies to eavesdropping warrants and their accompanying applications, and CPL article 705 contains no similar provision regarding pen register/trap and trace device orders.

Contrary to defendants' further contention, the applications for the eavesdropping warrants, which explained that normal investigative procedures were unlikely to succeed, properly demonstrated the necessity for the eavesdropping warrants (*see, People v Fonville,* 247 AD2d 115, 118-119). The applications described a sophisticated gambling operation for which conventional investigative techniques were insufficient to identify all of the participants and to gather pertinent evidence. According to the applications, confidential informants had provided helpful information but were unwilling to testify and unable to secure certain pertinent evidence. Physical surveillance was of limited use because the gambling activities occurred inside private buildings and residences and by use of the telephone. Furthermore, the analysis of pen register data would not reveal the identities of those persons placing and accepting wagers. Contrary to the contention of defendants, the evidence obtained pursuant to the search warrants is not fruit of the poisonous tree because the eavesdropping warrants were properly granted (*see, People v Barber,* 269 AD2d 758).

Also contrary to defendants' contention, the search warrants listed specific gambling-related paraphernalia and thus described with sufficient particularity the property to be seized

(*see, People v Nieves*, 36 NY2d 396, 401). Furthermore, defendants' allegation that "the observations attributed to the investigating agent were clearly unlikely" was speculative and thus insufficient to require a hearing to determine whether the agent intentionally or recklessly included false statements in his affidavit supporting the search warrants (*see generally, People v Hightower*, 85 NY2d 988, 989-990; *People v Mendoza*, 82 NY2d 415, 421-422).

We reject the contention of defendants that the indictment should have been dismissed based on a *Basilicato* violation (*see, People v Basilicato*, 64 NY2d 103). The interception "of nontelephonic conversations pursuant to a warrant that authorizes only wiretapping clearly goes beyond the scope of the warrant and requires suppression of the resulting evidence" (*People v Basilicato, supra,* at 114). Although there was a *Basilicato* violation because the eavesdropping warrants did not authorize the interception of nontelephonic conversations, the People expressly agreed to refrain from introducing evidence resulting from any such illegally intercepted conversations. Thus, contrary to the contention of defendants, there was no need for the court to hold a suppression hearing on that issue. Furthermore, although affidavits in support of subsequent pen register/trap and trace device orders and the second eavesdropping warrant referred to the content of one such nontelephonic conversation, there was ample support for the issuance of those subsequent orders and the second eavesdropping warrant absent consideration of any illegally obtained evidence (*see generally, People v Giordano*, 211 AD2d 814, 817, *affd* 87 NY2d 441; *People v Fata*, 159 AD2d 180, 186, *lv denied* 76 NY2d 985).

We reject the contention of defendants that the court erred in failing to order a *Bialostok* hearing (*see, People v Bialostok*, 80 NY2d 738) to determine the audio capabilities, if any, of the pen register/trap and trace devices. In *Bialostok,* the Court of Appeals held that a pen register device capable of monitoring telephonic conversations was subject to the probable cause requirements of CPL article 700 applicable to eavesdropping devices regardless of whether the device was actually used for that purpose (*see, People v Bialostok, supra,* at 742; *see also, People v Martello*, 93 NY2d 645, 651). The Court of Appeals has since held that *Bialostok* does not apply where it is undisputed that the procedures prescribed by CPL article 705 were strictly followed (*see, People v Martello, supra,* at 652-654; *see also, People v Kramer*, 267 AD2d 328). The Court wrote that the definition of "pen register" in CPL 705.00 (1), which

"contains no exclusion for pen registers capable of being converted into eavesdropping devices but not used in that capacity," coupled with the express exclusion of pen registers from the amended definition of "eavesdropping" in CPL 700.05 (1), "evinces a legislative intent to view all pen registers, including those readily adaptable as eavesdropping devices, as pen registers and not, as *Bialostok* held, eavesdropping devices" (*People v Martello, supra*, at 653-654). Here, OCTF obtained the pen register/trap and trace orders pursuant to the procedures outlined in CPL article 705, and defendants do not contend that there was less than strict compliance with those procedures.

Lastly, we decline to reduce the sentences despite the terminal illness and physical disability of defendant Angelo R. Plumeri and the poor health of defendant Vincent J. Palmeri. Both defendants are second felony offenders and were sentenced to aggregate terms of imprisonment of 2 to 4 years. If the medical condition of either defendant worsens and cannot be adequately treated by prison physicians, he may apply to the Parole Board for a "medical parole" under Executive Law § 259-r (*see, People v Baghai-Kermani*, 221 AD2d 219, 221). We have reviewed defendants' remaining contentions and conclude that they are without merit. (Appeal from Judgment of Niagara County Court, Fricano, J.—Promoting Gambling, 1st Degree.) Present—Green, J. P., Wisner, Hurlbutt, Kehoe and Lawton, JJ.