People v Drayton (2018 NY Slip Op 08323)





People v Drayton


2018 NY Slip Op 08323


Decided on December 5, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 5, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SHERI S. ROMAN
SYLVIA O. HINDS-RADIX
VALERIE BRATHWAITE NELSON, JJ.


2016-11907
 (Ind. No. 125/03)

[*1]The People of the State of New York, respondent,
v
Omnipotent Unique Drayton, appellant.


Carol Kahn, New York, NY, for appellant.
William V. Grady, District Attorney, Poughkeepsie, NY (Kirsten A. Rappleyea of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant, by permission, from so much of an order of the County Court, Dutchess County (Peter M. Forman, J.), dated October 11, 2016, as, in effect, upon renewal, adhered to a prior determination in an order dated August 6, 2014, denying, without a hearing, his motion pursuant to CPL 440.10 to vacate a judgment of the same court (Thomas J. Dolan, J.), rendered March 11, 2004, convicting him of murder in the second degree (two counts), attempted murder in the second degree, attempted robbery in the first degree (two counts), assault in the first degree (three counts), and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the order dated October 11, 2016, is affirmed insofar as appealed from.
In May 2001, the defendant and two accomplices, armed with handguns, approached Stewart Scott with the intention of robbing him. Scott, who was unarmed, tried to flee, and the defendant and his accomplices chased him, with the defendant's accomplice Dennis Brown in the lead. The defendant and his accomplices fired their weapons at Scott, and both Scott and Brown were struck by the gunfire. Scott survived the shooting, but Brown died as a result of a gunshot wound to the head. The defendant was charged, inter alia, with murder in the second degree based on a theory of transferred intent and depraved indifference murder in connection with the shooting death of Brown. At the defendant's trial, the court submitted both counts of murder in the second degree to the jury in the conjunctive, and by judgment rendered March 11, 2004, the defendant was convicted of both counts, as well as attempted murder in the second degree, among other crimes.
In December 2005, this Court affirmed the defendant's judgment of conviction (see People v Drayton, 24 AD3d 686). In January 2014, the defendant subsequently moved pursuant to CPL 440.10 to vacate the judgment of conviction, inter alia, on the ground that he was denied due process and a fair trial because the trial court erroneously submitted to the jury the counts of depraved indifference murder and intentional murder on a transferred intent theory in the conjunctive, rather than in the alternative. By order dated August 6, 2014, the County Court denied, [*2]without a hearing, the defendant's motion, finding, among other things, that the defendant could have raised the claim on direct appeal, but failed to do so, and, in any event, the County Court properly charged the intentional murder and depraved indifference murder counts in the conjunctive. A Justice of this Court denied leave to appeal from that order.
In April 2016, the defendant, citing the Court of Appeals' decision in People v Dubarry (25 NY3d 161), moved for leave to renew his motion pursuant to CPL 440.10 to vacate the judgment. By order dated October 11, 2016, the County Court, in effect, upon renewal, adhered to the prior determination denying the defendant's motion. The court determined that while Dubarry abrogated Appellate Division precedent with respect to whether a trial court could charge depraved indifference murder and intentional murder based on a theory of transferred intent in the conjunctive, rather than in the alternative, Dubarry did not apply retroactively. By decision and order on motion dated August 3, 2017, a Justice of this Court granted leave to appeal from the order dated October 11, 2016.
The defendant contends that the Court of Appeals' decision in People v Dubarry (25 NY3d at 165), decided on April 7, 2015, should be applied retroactively on collateral review of his convictions of depraved indifference murder and intentional murder on a theory of transferred intent. The defendant argues that the trial court's submission of charges of depraved indifference and intentional murder based on transferred intent in the conjunctive prevented the jury from rendering a verdict based on a proper determination of his mens rea. Contrary to the People's contention, the defendant's contentions were adequately preserved for appellate review (see CPL 470.05[2]).
In People v Dubarry (25 NY3d at 165), the Court of Appeals addressed "the novel question" of whether the defendant could be subject to multiple liability for a single homicide based on a theory of transferred intent. "The transferred intent theory, codified under Penal Law § 125.25(1), provides that where the resulting death is of a third person who was not the defendant's intended victim, the defendant may nonetheless be held to the same level of criminal liability as if the intended victim were killed'" (id. at 171, quoting People v Fernandez, 88 NY2d 777, 781). The Court in Dubarry concluded that the defendant "cannot be convicted of depraved indifference murder and intentional murder on a transferred intent theory in a case involving the death of the same person," and, "[t]herefore, the trial court erroneously submitted to the jury both charges in the conjunctive rather than in the alternative" (People v Dubarry, 25 NY3d at 165).
Dubarry was decided based upon state law and does not concern federal constitutional principles. In Dubarry, the Court explained that its determination that the transferred intent theory could not be employed to convict the defendant twice for the murder of the same victim was "based on [its] reading of the Criminal Procedure Law and the Penal Law, [its] case law, and the stated purpose of the transferred intent theory" (id. at 170; see People v Favor, 82 NY2d 254, 262; People v Mitchell, 80 NY2d 519, 526-527). Where, as here, no federal constitutional principles are involved, the question of retroactivity is one of state law, and we apply this State's rules in determining whether a new rule of law should be applied retroactively (see People v Martello, 93 NY2d 645, 650-651; People v Favor, 82 NY2d at 262; People v Mitchell, 80 NY2d at 527). The threshold question under that analysis is whether Dubarry established a "new" rule of law in this State (see People v Martello, 93 NY2d at 651; People v Favor, 82 NY2d at 263; see also People v Conceicao, 26 NY3d 375, 382).
In 1987, the Court of Appeals in People v Gallagher (69 NY2d 525, 528) held that "[w]here a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative." However, prior to Dubarry, precedent from this Court, as well as the First and Fourth Judicial Departments, permitted the trial court to charge depraved indifference murder and intentional murder based on a theory of transferred intent in the conjunctive, rather than in the alternative. In People v Douglas (73 AD3d 30, 33), this Court determined that the rule that a defendant ordinarily cannot be guilty of both intentional and reckless assault of the same individual "does not apply where the defendant does not harbor an intent to injure the victim but the crime is [*3]deemed intentional by operation of law under a theory of transferred intent." This Court explained that "a defendant may act with a specific intent directed at one person, while at the same time being reckless with respect to a different person" (id. at 34). In People v Henderson (78 AD3d 1506, 1507), the Fourth Department similarly concluded that "[w]here . . . more than one potential victim was present at the [scene of the crimes], a defendant may be convicted of both [intentional and depraved indifference crimes] because he or she may have possessed different states of mind with regard to different potential victims" (internal quotation marks omitted). Likewise, in People v Monserate (256 AD2d 15, 16), the First Department determined that counts of intentional murder and depraved indifference murder were properly submitted to the jury in the conjunctive, rather than in the alternative, because the "[d]efendant acted intentionally as to his intended victim, causing the death of the bystander victim with transferred intent, and . . . also acted with depraved indifference as to the people in the street, including the bystander victim" (see People v Page, 63 AD3d 506, 507-508; cf. People v Molina , 79 AD3d 1371, 1374).
Thus, contrary to the defendant's contention, Dubarry established new precedent and constitutes a new rule of law. Consequently, retroactivity analysis is required under this State's rules (see People v Martello, 93 NY2d at 651; cf. People v Eastman, 85 NY2d 265, 275-276). "Whether a new rule of New York State law is to be given retroactive effect requires an evaluation of three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application" (People v Martello, 93 NY2d at 651; see People v Pepper, 53 NY2d 213, 220; see also People v Mitchell, 80 NY2d at 527-528). "The second and third factors are, however, only given substantial weight when the answer to the retroactivity question is not to be found in the purpose of the new rule itself'" (Policano v Herbert, 7 NY3d 588, 603, quoting People v Pepper, 53 NY2d at 220).
"Courts are not generous in applying new rules of law to collateral proceedings, given the underlying considerations of finality'" (People v Jean-Baptiste, 11 NY3d 539, 543, quoting People v Favor, 82 NY2d at 261 n 2). The Court of Appeals "has drawn a sharp distinction between cases on direct appeal and cases in which [t]he normal appellate process [has come] to an end'" (People v Favor, 82 NY2d at 261 n 2, quoting People v Pepper, 53 NY2d at 222; see People v Jean-Baptiste, 11 NY3d at 543).
In Policano v Herbert (7 NY3d at 588, 603-604), the Court of Appeals, applying the three-factor Pepper test, determined that its then-new depraved indifference standard should not be applied on collateral review to defendants whose convictions became final prior to the Court's new interpretation of that law (see People v DiGuglielmo, 17 NY3d 771, 772; People v Jean-Baptiste, 11 NY3d at 543). The Court explained that the purpose of its gradually changing interpretation of the depraved indifference standard was to "dispel the confusion between intentional and depraved indifference murder, and thus cut off the continuing improper expansion of depraved indifference murder," and "to make future homicide prosecutions more sustainable, increasing the likelihood that defendants who are proven beyond a reasonable doubt to have committed intentional murder will be properly held to account for that crime" (Policano v Herbert, 7 NY3d at 603, 603-604 [internal quotation marks omitted]). The Court also recognized that "[d]efendants who commit[ ] vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final" (id. at 604 [internal quotation marks omitted]).
In the present case, upon considering the Pepper factors, we conclude that the Dubarry rule should not be applied retroactively to the defendant's collateral attack on his judgment of conviction. As to the first factor, the Court of Appeals in Dubarry clarified the proper application of the transferred intent theory, which should be employed, not to multiply criminal liability, "but to prevent a defendant who has committed all the elements of a crime (albeit not upon the same victim) from escaping responsibility for that crime" (People v Dubarry, 25 NY3d at 171-172 [internal quotation marks omitted]). The Court's purpose was to dispel confusion concerning the application of the separate mens rea of intent and depraved indifference to the same outcome (see id. at 173), and, similar to Policano, to make future homicide prosecutions more sustainable. [*4]Furthermore, in this case, as in Policano, "nonretroactivity poses no danger of a miscarriage of justice" (Policano v Herbert, 7 NY3d at 604). The other two Pepper factors also weigh in favor of nonretroactivity. As noted, three of the departments of the Appellate Division permitted the submission of both intentional (transferred intent) and depraved indifference crimes in the conjunctive. Moreover, "[a]ffording retroactivity to [the] defendant would mean that every defendant to whose case it was relevant, no matter how remote in time and merit, would become [a] beneficiary'" (People v Strawbridge, 76 AD3d 115, 120, quoting People v Pepper, 53 NY2d at 222). Accordingly, the County Court, in effect, upon renewal, properly adhered to its prior determination denying, without a hearing, the defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction.
The defendant's remaining contention that his counsel on his direct appeal was ineffective is not properly before this Court. "[A] common-law coram nobis proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel" (People v Bachert, 69 NY2d 593, 595-596; see People v Pachay, 185 AD2d 287, 287-288).
DILLON, J.P., ROMAN, HINDS-RADIX and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court