OPINION OF THE COURT
Acting Chief Judge Simons.
 Defendants have been convicted on gambling and conspiracy charges based, in part, on evidence derived from electronic monitoring of two telephone lines used to transmit bets. On these appeals they question whether a pen register[1] having the additional capacity to monitor conversations should be treated as an eavesdropping device[2] under the Criminal Procedure Law and therefore permitted only when a Magistrate has issued a warrant based on probable cause. We hold that unless a warrant is obtained for instruments such as these, which were capable of monitoring conversations, the evidence must be suppressed. In these cases, however, the error was harmless.
Defendant Scocco also contends that suppression is required in his case because law enforcement officials failed to meet the requirement of CPL 700.50 (3) that written notice of a wiretap be given within 90 days of a warrant’s termination. Because he received adequate informal notice through his attorney within the applicable time period, suppression is not required. Accordingly, the order of the Appellate Division should be affirmed in each case.
*743 I
Defendants and three others were indicted following an investigation of three "wire rooms” where bets were being taken over the telephone. They challenge the lawfulness of the electronic monitoring of the telephone lines at. one of them. In late November of 1986, an investigator installed electronic devices and monitoring telephones on two lines servicing the room. Each device was to serve as a pen register recording the telephone numbers dialed. Under the law at that time, a warrant based on probable cause was required for an eavesdropping device (CPL 700.15) but none was needed to install a pen register.[3] Numbers recorded by the devices over the next several days were then used to support an application for an eavesdropping warrant to monitor conversations on the two lines. The warrant was issued and the investigator returned to the monitoring equipment, where, by simply attaching an audio cable, a tape recorder and a wire to activate the recorder’s remote start, he converted the previously installed units into listening devices. Calls were monitored from December 12 until December 22 and the evidence obtained was used by the People to prosecute defendants and their associates.
The nature of the equipment used on the two lines was first discovered at trial during the testimony of the investigator who installed it. Unlike the traditional pen register, the equipment employed here had audio capacity and thus defendants contended that the monitors were really eavesdropping devices. Though no evidence was introduced to suggest any conversations were heard or recorded prior to the December 12 warrant, defendants argued that the technological capacity of the devices brought them within the eavesdropping statute and required that an eavesdropping warrant be obtained prior to installation. The Trial Judge ruled that no warrant was needed because the devices were used solely as pen registers. The Appellate Division agreed, relying on the testimony of the installer that he had "disabled” the audio function at installation and that it had remained disabled throughout the period prior to the warrant.
II
Analysis begins with an understanding of why pen registers *744 were exempted from the warrant requirement in the first place and why they continue to be treated differently from eavesdropping devices in the statutory scheme (compare, CPL 700.15, which requires evidence of probable cause for an eavesdropping warrant, and CPL 705.10, which permits a judicial order authorizing a pen register upon a showing of reasonable suspicion). Both the United States Supreme Court and this Court have found that use of the traditional pen register does not raise constitutional concerns (see, Smith v Maryland, 442 US 735 [applying the 4th Amendment]; People v Guerra, 65 NY2d 60 [applying NY Const, art I, § 12]). Underlying those holdings was a determination that a pen register was incapable of intruding on a legitimate expectation of privacy because it recorded only phone numbers dialed and disclosed nothing more than what phone users voluntarily conveyed to the telephone company in the ordinary course of business (Smith v Maryland, supra, at 744). Citizens have a legitimate expectation of privacy in the content of their phone conversations (Katz v United States, 389 US 347; Berger v New York, 388 US 41), but in the view of the Smith Court, no such expectation could attach to information so knowingly and routinely turned over to a third party. Central to the Court’s analysis was the pen register’s limited capabilities and the fact that unlike a listening device it does not "acquire the contents of communications” (at 741 [emphasis in original]). The Court, in making the distinction, quoted from its earlier decision in United States v New York Tel. Co. (434 US 159, 167): " 'These devices do not hear sound. They disclose only the telephone numbers that have been dialed * * * Neither the purport of any communication * * * nor whether the call was even completed is disclosed by pen registers’ ” (Smith v Maryland, supra, at 741).
The device used here undermines the logic of the court’s distinction between a pen register and a listening device. This device did not have capabilities limited to traditional pen registers only. In fact, it acquired the "contents of communications” from the moment it was installed. The addition of the audio cord and the tape recorder after the warrant was issued merely made accessible what was already being acquired.
The People’s case is no stronger because the audio function was "disabled” and no conversations were actually overheard. The issue is not the reasonableness of the search but statutory compliance. If a warrant is required by law, the fact that the officers behaved reasonably without one is unavailing. The *745 purpose of the warrant requirement is to interpose a neutral and detached Magistrate between citizens and the police to protect individuals from having to rely on the good conduct of the officer in the field for the protection of their right to be free of unreasonable searches. As Justice Jackson put it: "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent” (Johnson v United States, 333 US 10,14).
This Court has consistently recognized the " 'insidiousness of electronic surveillance’ ” (People v Liberatore, 79 NY2d 208, 213; People v Schulz, 67 NY2d 144, 148), and we have made plain that "[o]ur interpretation of article 700 must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect” (People v Washington, 46 NY2d 116, 121). In People v Gallina (66 NY2d 52), for instance, we declined to condone the decision by law enforcement officials to turn off a listening device rather than permanently inactivate it during a period when a warrant was not in effect. As we said there, "[t]hat no unauthorized eavesdropping may have occurred is beside the point, because it is the potential for abuse that is the focus of analysis” (id., at 58 [emphasis added]). In light of the broad legislative intent of article 700 to safeguard individual privacy and the potential for abuse embodied in the technology used here, we distinguish this more sophisticated technology from that at issue in earlier pen register cases. The traditional pen register considered in Smith v Maryland was, to large extent, self-regulating. Neither through police misconduct nor through inadvertence could it reveal to anyone any information in which the telephone user had a legitimate expectation of privacy. The same is not true of the device used here. This is a technology that has the capacity, through willful use or otherwise, to intrude on legitimately held privacy, and it is the warrant requirement, interposing the Magistrate’s oversight, that provides to citizens appropriate protection against unlawful intrusion. Thus, we hold the devices employed here were subject to the warrant requirement and installation of them without one was unlawful.
Nonetheless the failure to obtain a warrant during the initial period the devices were connected was harmless. Investigators obtained information about numbers called during that period and used it in support of their application for the eavesdropping warrant. But had that information been sup *746 pressed, as it should have been, other evidence supporting the application, including evidence acquired by surveillance and actually placing bets through the wire room, provided more than sufficient grounds for the Magistrate’s finding of probable cause to support the eavesdropping warrant.
III
Defendant Scocco raises one other issue meriting discussion: the adequacy and timeliness of the notice he received after the lawful wiretap was removed.
In 1986 CPL 700.50 (3) required that within 90 days "after termination of an eavesdropping warrant, or expiration of an extension order” written notice must be given to those named in the eavesdropping warrant and certain other parties, unless exigent circumstances exist. The statute specifies that the notice is to contain "the fact and date of the issuance of the eavesdropping warrant, and of the period of authorized eavesdropping, and of the fact that during such period communications were or were not intercepted”.
The eavesdropping done on the two telephone lines here ceased on December 22, 1986. The warrant, however, set a final expiration date of December 26. Depending on which date is used in the calculation, the 90 days expired on March 22 or March 26, 1987. Evidence introduced before the suppression court showed that prior to March 22 defendant Scocco received oral notice of the wiretap through his attorney, but the formal Notice of Intercept was not served until March 26. The suppression court held that the 90-day period began running on December 22 but found that the oral notice was timely and sufficient. The Appellate Division concurred in result, but reasoned that the 90-day period did not start running until December 26, bringing the written notice within the allowable time frame. Accordingly, it did not reach the issue of whether informal notice was adequate under the statute.
The 90-day period began on December 22. Although the language of the statute states that the relevant initiating event is termination of the warrant and not termination of the eavesdropping (see, United States v Principie, 531 F2d 1132, 1142, cert denied 430 US 905), those two events occurred simultaneously under the terms of this warrant. Tracking the language of the statute, it provided that "this eavesdropping warrant * * * shall terminate upon attainment of the autho *747 rized objective or in any event in the fifteen (15) days herein-above specified”. By its terms, then, the warrant terminated when the investigators attained their objective on December 22 and appropriately discontinued their surveillance at that time. The fact that they could have continued eavesdropping legally until December 26 if their objective had not been attained is irrelevant. Plainly, their objective was attained. Therefore, resolution of the issue before us turns on the adequacy of the oral notice to defendant’s attorney, the only notice provided within 90 days of December 22.
While CPL 700.50 (3) requires written notice, the failure to comply should not result in an order of suppression here when defendant had oral notice of the eavesdropping within the statutory period (see, People v Hueston, 34 NY2d 116, cert denied 421 US 947). In Hueston, defendant did not receive information directly from law enforcement sources. Instead, his knowledge had come through communication with a third person who had received a Notice of Intercept concerning a phone tap in another jurisdiction. We determined that suppression was not required under those circumstances because of defendant’s actual knowledge of the wiretap. Where actual knowledge of the existence of the warrant is demonstrated within the time period allowed for notification by the prosecution, formal written notification becomes a ministerial act, and the failure to notify does not require suppression of evidence (People v Hueston, supra, at 122).
Here, defendant Scocco knew through his attorney that there was a warrant, that his conversations had been intercepted and that the investigation pertained to gambling. Significantly, unlike in Hueston, the information was provided directly by law enforcement officials and formal notice was given, albeit four days late. Under these circumstances, suppression would serve no useful purpose.
While we have called for "meticulous compliance” with the eavesdropping statute (People v Liberatore, 79 NY2d 208, 213, supra) and held that failure to comply will generally result in suppression (see, People v Winograd, 68 NY2d 383, 391), we have made limited exceptions when notice issues are involved and the facts and circumstances suggest that suppression runs counter to the "commonsense balance between the rights of the defendants] and the needs of law enforcement” (People v Liberatore, supra, at 216; see, People v Hueston, supra). The purposes of the warrant notification require *748 ment are to publicize wiretaps to the community at large and to those subjected to them and to assure defendants are able to challenge the legality of eavesdropping warrants in a timely manner (People v Hueston, supra, at 122). Those purposes were served here by the direct notification to defendant’s attorney. We do not condone the delay in formal notice but suppression is not appropriate under these circumstances (compare, United States v Fury, 554 F2d 522, 528-529, cert denied sub nom. Quinn v United States, 433 US 910; see also, United States v Variano, 550 F2d 1330, cert denied 434 US 892; United States v Principie, 531 F2d 1132, supra).
We have reviewed defendants’ remaining contentions and find them without merit. Accordingly, the order of the Appellate Division in each case should be affirmed.
Judges Kaye, Titone, Hancock, Jr., Bellacosa and Smith concur.
In each case: Order affirmed.
[Next page is 751.]

. "[A] device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line” (CPL 705.00 [1]).

. In 1986, CPL 700.05 (1) defined "eavesdropping” as " 'wiretapping’ or 'mechanical overhearing of conversation,’ as those terms are defined in section 250.00 of the penal law”. "Wiretapping” is defined, in relevant part, as "intentional overhearing or recording of a telephonic or telegraphic communication” (Penal Law § 250.00 [1]).

. CPL 705.10 now requires a judicial order based upon a showing of reasonable suspicion to install a pen register (see, L 1988, ch 744, § 21).