OPINION OF THE COURT
Gloria Goldstein, J.
In the recently decided case of People v Bialostok (80 NY2d 738), the Court of Appeals enunciated a new doctrine relating to the legal requirements for the use of "pen register” devices in criminal investigations.
Bialostok (supra) determined that any electronic device capable of conversion from a pen register (which only records numbers dialed from a particular phone), into an instrumentality capable of intercepting conversations, must be treated as an eavesdropping device. Pursuant to the CPL, use of this instrumentality would be permitted only after issuance of a Magistrate’s warrant based upon probable cause.
Defendants in the instant case were indicted on charges of grand larceny and possession of stolen property predicated upon evidence derived from a pen register device. These cases raise issues concerning the retroactivity of Bialostok (supra), as well as the requisite standing needed to bring a Bialostok motion. For the purpose of the within opinion, the three pending indictments will be considered jointly.
Defendants move to suppress the pen register device used in these cases on the grounds that it was installed without a warrant, and, further, that there was less than probable cause in contravention of Bialostok (supra). Defendants additionally seek suppression of conversations obtained from a subsequent eavesdropping warrant and physical evidence from a subsequent search warrant which defendants contend constitute fruit of the illegal pen register.
Prosecution argues that the pen register utilized in these cases was issued in full compliance with CPL article 705 which, at that time, specifically authorized its use based on reasonable suspicion;[1] that, in any event, the subsequent *807 eavesdropping warrants and search warrant were supported by probable cause independent of any evidence obtained from the pen register; and, further, that Bialostok (supra) should not be applied retroactively.
Initially addressing the question of retroactivity, this court finds that, contrary to the prosecution’s position, Bialostok (supra) must be applied to these cases.
The most recent Court of Appeals pronouncements on retro-activity in People v Mitchell (80 NY2d 519), establish a bright-line dichotomy governing the retroactive effect of any new rule of law. If a new rule is grounded in Federal constitutional principles, it must be applied retroactively as dictated by the United States Supreme Court in Griffith v Kentucky (479 US 314).
Factors cited by the prosecutor such as law enforcement’s extensive reliance on prior authority and adverse effects on the administration of justice, may only be considered if the new rule is based exclusively on State law (People v Pepper, 53 NY2d 213).
Bialostok (supra) was clearly predicated upon Federal constitutional principles. The entire underpinning of the Court’s holding was based on an analysis of Fourth Amendment considerations discussed in Smith v Maryland (442 US 735) and Katz v United States (389 US 347). The Court, in fact, expressly concluded that the ability to obtain the contents of phone conversations would involve Fourth Amendment rights under the rationale of those decisions.
While Bialostok (supra) dealt facially with a statutory interpretation of article 700, that statute is rooted in Federal constitutional law (People v Washington, 46 NY2d 116, 121-122). Thus, the Federal constitutional basis of Bialostok mandates its retroactive application.
An essential issue raised sua sponte is whether the defendants have standing under Bialostok (supra) to make application to controvert the pen registers herein involved.
Defendants were not the target of the original investigation which ultimately led to the charges currently filed against them. Members of the New York City Police Department’s Auto Crimes Division had been engaged in an investigation into the activities of one Anthony Cuozzo who operated an auto glass shop in Kings County. Physical surveillance of a separate location utilized by Cuozzo revealed that Cuozzo was engaged in the wholesale theft and unlawful dismantling of *808 automobiles. As a result of this physical surveillance and the knowledge obtained therefrom, an application was made for an order authorizing installation of a pen register on a telephone line at Cuozzo’s auto glass shop, known as New Lots Auto Glass. The Justice entertaining the application granted the order on a showing of reasonable suspicion (as provided for under CPL art 705), and authorized installation of a pen register on Cuozzo’s telephone line for a period of 60 days. At the expiration of the 60-day period, an order was thereafter issued permitting the commencement of eavesdropping on the Cuozzo telephone. Subsequently, a search warrant was issued for Angle Auto Parts, Inc.
Defendants’ conversations were subsequently overheard on the eavesdropping warrant.[2] It is the pen register on the Cuozzo telephone line, however, which defendants now seek to controvert. Defendants contend that the eavesdropping and search warrants must be suppressed since they were based on information gleaned from the illegal pen register.
Under both New York State and Federal law (which preempts State law in the area of electronic surveillance [People v Shapiro, 50 NY2d 747, 763]), there are only three recognized categories which confer standing on a defendant to move for suppression of illegally obtained eavesdropping evidence.
Standing is limited to (1) a person who has a proprietary interest in the premises or telephone which is the subject of the wiretap (People v Marans, 127 AD2d 795; People v La Rocea, 112 AD2d 1010; Alderman v United States, 394 US 165); or (2) a person who has had his conversations intercepted (United States v Fury, 554 F2d 522, cert denied 436 US 931; People v Troia, 104 AD2d 389; CPL 710.10 [5]; CPLR 4506 [2] Pd]); or (3) a person against whom a wiretap is directed (United States v Fury, supra; CPL 710.20, 710.10 [5]; CPLR 4506 [2] [c]; 18 USC § 2510 [11]).
The defendants are not included under any of these three categories.
Defendants had no proprietary interest in the premises or telephone involved, their conversations were never intercepted, overheard or recorded on the pen register, and the pen register order was not directed against them.
*809 The fact that defendants’ conversations were overheard on the eavesdropping warrant grants them no derivative right to contest the prior pen register order (People v Marans, supra, at 796). Defendants must establish independent standing to contest the pen register based on installation of the pen register itself (People v La Rocca, supra). This is true even if information procured from the pen register was made part of the application for the eavesdropping warrant (see, United States v Fury, supra, at 523-524).
Defendants’ conversations having been overheard on the eavesdropping warrant, establish standing to contest that eavesdropping warrant, but are irrelevant to the wholly separate question of standing to contest any illegality of the prior pen register (People v Marans, supra; United States v Fury, supra). While defendants’ privacy interests were clearly involved in the eavesdropping warrant which recorded their conversations, the question is whether defendants possess a recognizable privacy interest violated by the pen register (People v La Rocca, supra).
The fact that the pen register utilized in this case had audio capacity and the "potential” to overhear defendants’ conversations cannot, in and of itself, establish standing for the defendants.
While the Bialostok decision (supra, 80 NY2d, at 744-745) spoke of the "potential for abuse” in such devices and held the statutory warrant requirement applicable even if "no conversations were actually overheard”, this court does not believe that the Court of Appeals intended, by this analysis, to confer standing solely on the basis of that "potential” for abuse. Such a result would create the anomaly wherein greater rights of standing would be conferred for pen registers with audio capacity than those currently provided under the law applicable to outright eavesdropping devices.
The automatic standing rule was abandoned in New York over a decade ago (People v Tejada, 81 NY2d 861). The Fourth Amendment right against unreasonable searches and seizures has been held to be a personal right (People v Weiss, 63 AD2d 662). Standing is available only if a defendant "demonstrate^] a personal legitimate expectation of privacy” (People v Wesley, 73 NY2d 351, 357), and " 'establishes], that he himself was the victim of an invasion of privacy’ ” (People v Ponder, 54 NY2d 160, 165, quoting Jones v United States, 362 US 257, 261). The defendant must show that his own right to privacy *810 has actually been violated (United States v Ricco, 421 F Supp 401).
The court cannot extrapolate from Bialostok (supra) that a fourth category of standing should be created based on the "potential” for a defendant’s conversations to be heard with audio pen registers. A holding of this nature would constitute a radical departure from current Fourth Amendment law, substituting protection against "potential” searches and seizures for protection against actual searches and seizures which are violative of the Fourth Amendment.
The crux of Bialostok (supra) is a definitional one. Insofar as compliance with the statutory requirements of article 700 is concerned, a pen register with audio capacity should be treated no differently than an outright eavesdropping device. Similar treatment must extend to questions of standing as well. If an eavesdropping device was the subject of defendants’ instant motion to suppress, there would be no question but that defendants lacked standing (People v Edelstein, 54 NY2d 306; People v Sardegna, 91 AD2d 671; People v Butler, 33 AD2d 675, affd 28 NY2d 499). That conclusion must, of necessity, be the same for a pen register with audio capacity.
Defendants’ motions be and the same hereby are denied for lack of standing.

. Under CPL article 705, enacted in 1988, installation of a pen register requires a judicial order based on reasonable suspicion.

. Prior to Bialostok (supra) being handed down, defense motions to suppress the eavesdropping and search warrants were denied, based on a finding that the warrants were supported by ample probable cause.