J. Nelson Hood, Esq. Informal Opinion Village Attorney No. 97-47 Village of Haverstraw Municipal Building 40 New Main Street Haverstraw, N Y 10927
Dear Mr. Hood:
You have asked whether the village may install video surveillance cameras at several locations to monitor the public streets and sidewalks. You state that the cameras will be operated from the village police station where monitors will be located, and that videotape recordings of the cameras' observations will be maintained. In a telephone conversation, you further advised that the camera angles can be adjusted from the station, that the police will be instructed not to position the cameras to film the interior of residences and that it may be possible to program the cameras so that such filming cannot be done. You informed us that the cameras have no audio component and will not be used to decipher speech. You also note that the police force plans to use videotapes from these cameras as evidence in the prosecution of any crimes revealed during video surveillance. The village hopes that use of the cameras will enable its small police force to reduce local crime at a reasonable expense. You inquire whether video surveillance of public streets and sidewalks is constitutional and permitted by statute.
We are aware of no State law that expressly prohibits video surveillance of public places by a municipality's police force as you describe it. However, Criminal Procedure Law Article 700 establishes stringent requirements for the issuance of eavesdropping and video surveillance warrants. CPL § 700.05(9). The statute provides that a district attorney or the Attorney General may apply for a warrant, specifies to whom the application may be made, and lists the "designated offenses" that may be the subject of an application. Criminal Procedure Law §§ 700.05 (4), (5), (8); 700.10.
Article 700 also defines "video surveillance" to mean
 the intentional visual observation by law enforcement of a person by means of a television camera or other electronic device that is part of a television transmitting apparatus, whether or not such observation is recorded on film or video tape, without the consent of that person or another person thereat and under circumstances in which such observation in the absence of a video surveillance warrant infringes upon such person's reasonable expectation of privacy under the constitution of this state or of the United States. Id., § 700.05(9).
Article 700 defines "eavesdropping" to include wiretapping, mechanical overhearing of conversation and the intercepting or accessing of an electronic communication as those terms are used in Penal Law §250.00. "Mechanical overhearing" means the use of a device for the intentional overhearing of a conversation without the consent of one of the parties by a person not present. Penal Law § 250.00(2). Any video surveillance that includes an audio component would fall within this definition and the warrant requirements for eavesdropping would apply. (See, Preiser, Practice Commentaries, McKinney's Criminal Procedure Law § 700.05, p 562 [1995 ed]).
Under the above statutory definition, a warrant is required for video surveillance without an audio component only when the surveillance would infringe upon a reasonable expectation of privacy. Therefore, we must analyze whether persons videotaped while on public streets and sidewalks have a reasonable expectation of privacy.
Courts have analyzed a person's reasonable expectation of privacy in interpreting the Fourth Amendment to the Federal Constitution and Article 1 § 12 of the New York State Constitution, which both provide that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . .".
In Katz v. United States, 389 U.S. 347 (1967), the United States Supreme Court held that electronic interception of an individual's telephone conversation without a warrant is unconstitutional, even though the defendant had placed the calls from a public telephone booth. In so holding, the Court reasoned that ". . . the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."389 U.S. at 353 (citations omitted). In his concurring opinion, Justice Harlan stated what has become known as the Katz rationale:
 My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.
Although the Court has not ruled directly on warrantless videotaping of public streets and sidewalks, it has continued to hold that what is knowingly exposed to the public is not protected by the Fourth Amendment. In California v. Ciraolo, 476 U.S. 207 (1986), for example, a divided Court (5-4) held that a warrantless aerial search of a fenced-in back yard did not constitute a Fourth Amendment violation. The Court noted that the officers viewed the property from public navigable airspace and stated that the Fourth Amendment does not preclude a police officer from making observations from a public vantage point where the officer has a right to be present and that renders the observed activities clearly visible.
In United States v. Taketa, 923 F.2d 665 (9th Cir 1991), the Ninth Circuit held that warrantless videotaping of state and federal agents in the state agent's office violated their reasonable privacy interests and that introduction of the videotapes into evidence constituted reversible error. In so holding, the court reasoned that it must apply Katz and analyze whether the person searched had a subjective expectation of privacy and whether that interest is one that society is prepared to recognize as reasonable. The court stated:
 Video surveillance does not in itself violate a reasonable expectation of privacy. Videotaping of suspects in public places, such as banks, does not violate the fourth amendment; the police may record what they normally may view with the naked eye. Persons may create temporary zones of privacy within which they may not reasonably be videotaped, however, even when that zone is a place they do not own or normally control, and in which they might not be able reasonably to challenge a search at some other time or by some other means. (Citations omitted and emphasis supplied.) 923 F.2d at 677.
See also, McCray v. Maryland, 581 A.2d 45 (Md App 1990), cert denied,586 A.2d 14 (Md 1991) (warrantless video of defendant crossing street properly admitted into evidence; no justified expectation of privacy is violated by videotaping activity occurring in full public view); Peoplev. Milom, 75 A.D.2d 68 (1st Dept 1980) (no justified expectation of privacy as to incriminating conduct that occurs in public area of restroom rather than inside stalls; visual surveillance of public area did not require warrant).
The New York Court of Appeals also has not ruled on the propriety of warrantless videotape surveillance of individuals in public places. It is noteworthy, however, that the Court of Appeals has, in other circumstances, held that the State Constitution affords greater protection than the Fourth Amendment does. In People v. Scott, 79 N.Y.2d 474
(1992), for example, the Court held that the ruling in Oliver v. UnitedStates, 466 U.S. 170 (1984), does not adequately protect fundamental State constitutional rights. Accordingly, the court rejected the Oliver
holding that in areas outside the curtilage an owner of "open fields" enjoys no Fourth Amendment protection.
Scott involved police entry onto rural property of the defendant's that was posted with "No Trespassing" signs. The Court first noted thatOliver is inconsistent with the analysis in Katz. 79 N.Y.2d at 485. The Court then rejected the Oliver Court's categorical holding that an expectation of privacy in land outside the curtilage is not one that society is prepared to recognize as reasonable, because it does not adequately preserve fundamental rights of New York citizens. The Court stated that it consistently had applied the Katz principle that the constitutional provisions protect people and not particular places, and that the Oliver Court's holding would subvert New York's acceptance of the principle that the Constitution protects an individual's reasonable expectation of privacy. Compare, People v. Reynolds, 71 N.Y.2d 552
(1988), in which the Court held that warrantless aerial and ground surveillance of the defendant's property did not violate the State Constitution. The Court concluded that the owner had no reasonable expectation of privacy in open fields and woods when she had taken no precautions, such as putting up fencing or "no trespassing" signs to exclude the public. The Court stated that "conduct and activity which is readily open to public view is not protected". 71 N.Y.2d at 557.
In People v. Bialostok, 80 N.Y.2d 738 (1993), the Court held that a pen register that had the additional capacity to monitor conversations should be treated as an eavesdropping device under the Criminal Procedure Law, so that a warrant was required for its use, even when the monitoring function was not activated. In so holding, the Court stated that it has "consistently recognized the `insidiousness of electronic surveillance'" and made plain that it will construe CPL article 700 in a way that is "sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect." 80 N.Y.2d at 704.
Under the rationale of these cases, it appears that, generally, a person on a public street or sidewalk would not be held to have a reasonable expectation that his or her actions would be private, in the sense of being free from observation. Accordingly, warrantless video surveillance of such areas does not, per se, violate existing standards under the Federal or State Constitution or State law. We caution, however, that courts have held that the constitutional provisions protect people, not places, and have applied a strict construction of the Criminal Procedure Law provisions governing electronic surveillance. Accordingly, the courts make a case-by-case analysis as to an individual's reasonable expectation of privacy.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
SIOBHAN S. CRARY
Assistant Attorney General