OPINION OF THE COURT
Dominic R. Massaro, J.
In this prosecution for promoting gambling in the first degree (Penal Law § 225.10), the court is called upon to determine standing to challenge as well as the propriety of the deployment of pen registers[1] to gather evidence against Gary Medure, Vincent Ciardello, John Carlatone and Linda Russotti, named herein as defendants. The People propose to use the fruits of this digital surveillance both directly in their case against the named parties, and derivatively as the information garnered from the pen registers was used in subsequent applications to establish probable cause for the issuance of eavesdrop and search warrants, which in turn yielded incriminatory evidence.
The particular devices involved in the surveillance at issue contained a nonaudio “slave loop extender” which blocked interception of oral communication. These were, however, easily convertible to eavesdropping devices with the additional capacity to monitor conversations. There is no allegation that a conversion was attempted prior to the issuance of the subsequent warrants. The defense claims this is of no moment.
The Issues
The law regarding the use of pen registers has evolved by both statutory enactment and court construction in recent *169 years; the court is afforded the opportunity to examine three issues presented in light thereof.
1. What criteria determine statutory standing to contest the introduction of digital telephonic evidence?
2. WThat is the effect of employment of a digital device that is convertible to interception and recordation of aural transmissions?
3. Does the suppression of evidence garnered by a pen register preclude its use as part of a probable cause showing necessary to support an eavesdrop or search warrant in the same case?
The Law
1. Standing to Challenge
An analysis of standing to suppress evidence alleged to have been illegally obtained by the use of a pen register must begin by noting that this evidence differs from most other suppressible evidence in that its illegal collection does not raise Federal or State constitutional concerns (see Smith v Maryland, 442 US 735 [1979]; People v Guerra, 65 NY2d 60 [1985]). Both the Supreme Court and our Court of Appeals have determined that as a pen register records only phone numbers that are voluntarily conveyed to the telephone company in the ordinary course of business, no legitimate expectation of privacy flows from disclosure of said numbers. Thus, no constitutional principle is at risk. Suppression of this type of evidence then becomes contingent on controlling statutory authority.
CPL 710.20 (7) provides that an “aggrieved person” may move to suppress evidence seized as a result of a pen register or trap and trace device that was installed in violation of CPL article 705. CPL 710.10 (5) defines an “aggrieved person” as including, “but * * * in no wise limited to” persons defined in CPLR 4506 (2). This latter section precludes the use of evidence obtained by any conduct that would constitute the crime of eavesdropping (Penal Law § 250.05), and defines an “aggrieved person” as one who was a sender or receiver of a telephonic communication recorded without consent by means of a device or a person against whom the recording was directed (see CPLR 4506 [2] [a], [c]). In People v Kramer (92 NY2d 529 [1998]), an examination of all these interlocking statutes concluded (at 539) “that the Legislature intended to provide a statutory basis for pen register standing, proportionate and appropriate to that already in place by enactment covering eaves *170 dropping standing — though not necessarily equivalent.” This conclusion is consistent with what the Court of Appeals has described as “reflective of this State’s strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals” (People v Kramer, supra at 538-539, quoting People v Capolongo, 85 NY2d 151, 160 [1995] [internal quotation marks omitted]).
In the instant case, Mr. Medure was initially named a target in the application for a pen register order; his codefendants evolved as targets as a result of the evidence garnered by the surveillance. Clearly, the defendant named originally has standing pursuant to CPLR 4506 (2) (c) and the question remaining is whether statutory standing should also be conferred on those who came under investigation subsequently: Messrs. Ciardello and Carlatone and Ms. Russotti. Kramer (supra at 540) answers this question definitively and in the affirmative:
“All of the defendants * * * before this Court were surely contemplated, albeit not initially named and identified, within the catch-all language in the applications and judicial authorizations * * * When they emerge into identifiable targets through technology that downloads their developing profiles, and other descriptive identifying data, they should be allowed to question the legality of the net deployed to capture them * * * Thus, under a realistic reading of CPLR 4506 (2) (c), all the later-tagged individuals, who became identifiable targets by virtue of the pen register order, should be deemed subjects of the investigation, in the words of the statute, to qualify initially for at least statutory standing to challenge that order.”
2. Use of a Convertible Device
Prior to the enactment of statutory controls, no warrant was necessary for the implementation of pen register electronic surveillance. In 1988, the Legislature enacted Criminal Procedure Law article 705 regulating the use of pen register and trap and trace devices and also amended those statutes that previously governed the interception of aural communications to reflect the evolution of telecommunications towards the transmission of digital data (see Penal Law § 250.00; CPLR 4506; CPL art 700; 710.20 [7]).
In People v Bialostok (80 NY2d 738 [1993]), our Court of Appeals first confronted the issue of the suppression of pen regis *171 ter evidence in the context of a seizure without any prior judicial approval. While the Bialostok decision postdates the enactment of CPL article 705, the surveillance in question had been done prior to the enactment and thus without warrant. The electronic devices employed in Bialostok were similar to those used in the instant case in that they were convertible from digital to aural interception. On this set of facts, upon which defendants rely, it was determined that a convertible pen register was the equivalent of an eavesdropping device and {id. at 742): “unless a warrant is obtained for instruments such as these, which were capable of monitoring conversations, the evidence must be suppressed.” The Court suppressed the pen register evidence both as direct evidence and as derivative evidence to support a probable cause determination on a later issued warrant.[2] The Bialostok decision, read by the various Appellate Divisions as a per se rule banning the use of convertible devices, led to a series of cases which suppressed both direct and derivative evidence gathered by convertible surveillance devices (see, e.g., People v Fiore, 246 AD2d 664 [2d Dept 1998], lv denied 91 NY2d 941 [1998]; People v Gilpin, 216 AD2d 62 [1st Dept 1995]; People v LaMendola, 206 AD2d 207 [4th Dept 1994]).
In Kramer (supra at 541), the Court of Appeals revisited the issue and retreated from Bialostok as misconstrued, stating: “Bialostok should be understood and applied as a more fact specific, adaptable legal guidepost for sophisticated modern technologies” and further that “ [i]f the digital and audio functions are sufficiently discrete and the susceptibility to misuse is remote, the mere fact that the technology may be audio-capable may not be per se dispositive of the type of warrant required for installation.” It is notable that the Court’s language addresses the “type of warrant” question as this language acknowledges the impact of the passage of CPL article 705 on its reasoning in revising the logic of Bialostok.[3]
In People v Martello (93 NY2d 645, 652 [1999]), the High Court was more direct: “[H]ere, we address, for the first time, *172 whether the rule announced in Bialostok should apply in a case where the pen register surveillance is undisputedly conducted in strict compliance with the legislative commands of CPL article 705.” Noting that the definition of “pen register” in this article contains no exclusion for devices capable of conversion to an eavesdropping capacity, the Court further commented on the amendment of CPL 700.05 that explicitly excludes pen registers from the definition of eavesdropping when such devices are authorized pursuant to CPL 705.10. The Martello Court concluded (at 654): “The concomitant result is that the CPL article 705 definition of ‘pen register,’ combined with the operative effect of the Legislature’s express exclusion of pen registers from the CPL article 700 definition of ‘eavesdropping,’ evinces a legislative intent to view all pen registers, including those readily adaptable as eavesdropping devices, as pen registers and not, as Bialostok held, as eavesdropping devices.” In the instant case, the pen registers utilized were duly authorized and undisputedly used in strict compliance with the statute. Therefore, the evidence was legally gathered and is admissible at trial.
3. Derivative Evidence
Having determined that the evidence collected in the instant case was garnered legally, and that suppression does not lie, its derivative use was clearly proper. Notwithstanding, the derivative use of pen register evidence is always permissible even where such evidence has been suppressed as directly admissible at a defendant’s trial. Inasmuch as this form of evidence enjoys no constitutional protection, and in fact has been found “not a search” by the United States Supreme Court (Smith v Maryland, supra at 746), a defendant’s right to suppress pen register evidence in New York is dependent exclusively on the provisions of the Criminal Procedure Law.
The suppression remedy created by section 710.20 (7) thereof is a narrow one. It is set forth in a separate subdivision, according to the Practice Commentaries, in order
“to exempt unauthorized use of a pen register or a trap and trace device from the coverage of subdivision four, which requires suppression of derivative or secondary evidence (in addition to primary evidence). Thus, evidence directly obtained by the unauthorized use of a pen register or a trap and trace device will be suppressed, but evidence lawfully acquired through the use of that information (so-called ‘secondary evidence’) will not be *173 suppressed. The distinction can be illustrated by a simple example. Assume a pen register is installed on a suspect’s telephone line without Article 705 authorization and information is acquired that a certain telephone number has been called from the suspect’s telephone. That information itself cannot be used at trial. It can, however, be used to show probable cause (or an ingredient of probable cause) for a search warrant or an eavesdropping warrant that will yield evidence which can be used at trial” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 710.20, at 10-11).
Thus, while the statutory scheme permits derivative evidence to be subject to suppression where the evidence was obtained as a result of unlawful search and seizure (CPL 710.20 [1]), unlawful eavesdropping or video surveillance (CPL 710.20 [2]), or an involuntary statement (CPL 710.20 [3]), it does not encompass derivative evidence being subject to suppression even where the evidence was acquired as a result of information obtained by means of a pen register or trap and trace device installed or used in violation of CPL article 705 (see CPL 710.20 [4]).
As further noted in the Practice Commentaries, this distinction is not as clear as it might be, since CPL 710.20 (4) does not specifically exclude subdivision (7), but does so only by inference. However, it is clear that this distinction with regard to derivative evidence actually reflects the legislative intent; special mention of it is made by the Governor in his memorandum of approval (No. 59 of 1988; see Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 710.20, at 11).
Returning to Bialostok, defendants may argue that the Court of Appeals sanctioned the suppression of derivative evidence obtained as a result of the unlawful use of a pen register. The Court (id. at 742) did hold that a pen register which has “the additional capacity to monitor conversations” should be treated as an eavesdropping device and should therefore only be permitted when a magistrate has issued a warrant based on probable cause. As also above-noted, the particular pen register before the Court in that case was determined to be “capable of monitoring conversations,” and was therefore subject to the warrant requirement (People v Bialostok, supra at 742). Since no warrant básed on probable cause had been issued, the Court held that the information obtained from the pen register should *174 indeed be suppressed, and its use in a subsequent application for an eavesdropping warrant subjected that derivative evidence to suppression as well.[4]
Notwithstanding, a closer examination of the Bialostok opinion without the context of a statutory scheme governing motions to suppress evidence not in place at the time and, therefore, not applicable, makes for a different result. Bialostok, although decided in 1993, concerned events which took place in 1986. Article 705 and section 710.20 (7) of the Criminal Procedure Law were not enacted until 1988. The Court in Bialostok recognized this fact (see People v Bialostok, supra at 743, n 3; People v Bialostok, 81 NY2d 995 [1993]), and decided the case based on the law in effect in 1986. Thus, that Court could not and did not consider the People’s statutory argument respecting derivative evidence first advanced here.
Conclusion
Standing having been granted to each named defending party, and a properly authorized pen register found to have been installed to support the introduction of the fruits thereof as direct evidence against Messrs. Medure, Ciardello, Carla-tone and Ms. Russotti, defendants’ further argument(s) to suppress additional evidence obtained by execution of eavesdropping and search warrants as derivative evidence violative of pen register utilization is rejected.

. A “pen register” is “a device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted on [a] telephone line * * *” (CPL 705.00 [1]).

. Upon further analysis of the eavesdropping application, the Bialostok Court found that other evidence, apart from that obtained from the pen register, provided more than sufficient grounds for the magistrate’s finding of probable cause to support the eavesdropping warrant. Consequently, the Court held that in the circumstance the unlawful use of the pen register constituted “harmless error” (People v Bialostok, supra at 742, 745).

. As amended, no warrant based upon probable cause is required prior to the government’s use or installation of a pen register device. Instead, CPL 705.10 now permits same upon the seeming of a judicial order based upon reasonable suspicion of a crime (see L 1988, ch 744, § 21).

. Id., n 2 at 171.