[970 NE2d 816, 947 NYS2d 781]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL
RODRIGUEZ, Appellant.

Argued March 20, 2012; decided April 26, 2012

**POINTS OF COUNSEL**

*Center for Appellate Litigation,* New York City (*Susan H. Salomon* and *Robert S. Dean* of counsel), for appellant. I. Where appellant moved to suppress the intercepted calls allegedly between him and the cooperating accomplice, premised on the prosecution's failure to provide posttermination notice of the interceptions mandated by CPL 700.50 (3), the Appellate Division erred in imposing a prejudice pleading-requirement and thereby affirming the summary denial of the motion. (*People v Velasquez,* 1 NY3d 44; *People v Bonilla,* 82 NY2d 825; *People v LaFontaine,* 92 NY2d 470; *People v Tartt,* 71 Misc 2d 955; *People v Hueston,* 42 AD2d 860; *People v Bialostok,* 80 NY2d 738; *People v Darling,* 95 NY2d 530; *People v Schulz,* 67 NY2d 144; *People v Capolongo,* 85 NY2d 151; *People v Basilicato,* 64 NY2d 103.) II. Contrary to the Appellate Division's determination, the trial

court, without legitimate basis, interfered with and disparaged counsel's cross-examination of the prosecution's key witness—the accomplice-cooperator—and thereby, as counsel argued, signaled the court's belief in the witness's credibility, all of which warranted a mistrial. (*People v Yut Wai Tom*, 53 NY2d 44; *People v De Jesus*, 42 NY2d 519; *People v Arnold*, 98 NY2d 63; *People v Grant*, 185 AD2d 896; *People v Mees*, 47 NY2d 997.) III. Counsel rendered ineffective assistance concerning the drug-sale sentence, where he failed to argue the unconstitutionality of the 17-year determinate prison term. (*Janvier v United States*, 793 F2d 449; *People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *Strickland v Washington*, 466 US 668; *People v Turner*, 5 NY3d 476; *People v Baker*, 14 NY3d 266; *People v Pena*, 50 NY2d 400; *People v Jones*, 39 NY2d 694; *United States v Wiley*, 278 F2d 500; *People v Slobodan*, 67 AD2d 630.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Alice Wiseman* and *Susan Axelrod* of counsel), for respondent. I. Defendant is not entitled to suppression of his intercepted conversations. (*People v Nix*, 78 AD3d 1698; *People v Bigelow*, 68 AD3d 1127; *People v Rivera*, 257 AD2d 425; *People v Basora*, 75 NY2d 992; *People v Burke*, 72 NY2d 833; *People v Kinchen*, 60 NY2d 772; *People v LaFontaine*, 92 NY2d 470; *People v Patterson*, 78 NY2d 711; *United States v Donovan*, 429 US 413; *Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539.) II. The trial judge did not improperly interfere with defendant's cross-examination of George Cabrera. (*People v Yut Wai Tom*, 53 NY2d 44; *People v Charleston*, 56 NY2d 886; *People v Moulton*, 43 NY2d 944; *People v De Jesus*, 42 NY2d 519; *People v Jamison*, 47 NY2d 882; *People v Garrett*, 231 AD2d 428; *People v Johnson*, 219 AD2d 509; *People v Gonzalez*, 38 NY2d 208; *People v Arnold*, 98 NY2d 63; *People v Davis*, 58 NY2d 1102.) III. Defendant's attorney was not constitutionally ineffective at sentencing. (*People v Thompson*, 60 NY2d 513; *People v Rivera*, 71 NY2d 705; *People v Love*, 57 NY2d 998; *People v Jones*, 55 NY2d 771; *Mickens v Taylor*, 535 US 162; *Strickland v Washington*, 466 US 668; *People v Turner*, 5 NY3d 476; *People v Caban*, 5 NY3d 143; *People v Benevento*, 91 NY2d 708; *People v Hobot*, 84 NY2d 1021.) IV. Defendant's pro se supplemental claims are meritless.

### OPINION OF THE COURT

Pigott, J.

The New York Drug Enforcement Task Force obtained an eavesdropping warrant on July 21, 2005, in order to intercept

the cell phone calls of George Cabrera, a Queens drug dealer. Another target of the warrant was a person later identified as defendant Rafael Rodriguez, also known as "Rafi." Agents recorded a number of Cabrera's conversations, including several that occurred on August 1, 2005 during which Cabrera spoke with defendant and with Willie "Buddha" Smith.

In the first call, using coded language, which Cabrera interpreted at defendant's trial, Smith confirmed with Cabrera that he wanted to buy 150 grams of cocaine. The two men had agreed on a price for this transaction the previous day. When Smith asked how long it would take Cabrera to get the cocaine, he replied that he would need to ask "Rafi." As Cabrera explained at trial, he was referring to defendant, who had agreed to obtain the drugs in Manhattan, in exchange for a share in the profits. Minutes later, Cabrera phoned defendant, expecting him to be in Manhattan. Defendant was still in Queens, but assured Cabrera he had time to do the job. Cabrera told defendant to go to Manhattan immediately, and then called Smith to ask for an extension of a few hours.

In a call later that afternoon, Cabrera told defendant that he was going to meet Smith at 6:00 P.M. Defendant said he would join Cabrera. Cabrera confirmed arrangements with Smith, and picked defendant up at a street corner in Manhattan. Defendant told Cabrera that he was going to get the cocaine from a dealer nearby and had Cabrera drive to an intersection two blocks away. There Cabrera stepped out of the car. While Cabrera was talking with an acquaintance, he noticed a man walk by his vehicle and, upon returning, was told by defendant that the cocaine was now in his car.

Defendant and Cabrera drove to Queens. At about 6:40 P.M., Smith walked to a preassigned meeting place just as defendant and Cabrera arrived. Smith got into the back seat of Cabrera's vehicle. Smith, meanwhile, was the target of an investigation unrelated to the Drug Enforcement Task Force's, and a New York City Police Department (NYPD) detective, Constantine Papadopoulos, was sitting in an unmarked car conducting surveillance. Papadopoulos observed Smith talking with defendant and Cabrera, saw money in Smith's hands, and noticed Cabrera lean forward to get a black plastic bag from defendant. At this point, Detective Papadopoulos and his partner arrested the three men. Papadopoulos found a black plastic bag where defendant had been sitting. Cabrera had $750 on his person. Smith had $155,

and $4,000 was found where he had been sitting in the vehicle. The plastic bag contained more than five ounces of cocaine.

After the Drug Enforcement Task Force learned that Cabrera had been arrested by the NYPD, it "rearrested" Cabrera, along with defendant and Smith. Cabrera was charged in federal court in relation to an unrelated 2004 heroin deal. Cabrera pleaded guilty in the federal case; the mandatory minimum for the offense was 120 months' imprisonment.

Defendant first learned that he had been a subject of an eavesdropping warrant at his arraignment on December 15, 2005. A week later, he was charged by indictment with criminal sale of a controlled substance in the first degree (Penal Law § 220.43 [1]) and conspiracy in the second degree (Penal Law § 105.15). Cabrera was charged with the same crimes. (Smith, meanwhile, pleaded guilty to criminal possession of a controlled substance in the second degree, and was sentenced to 3½ years' imprisonment.)

In an omnibus motion filed in April 2006, defendant moved to suppress the intercepted phone calls on the ground that the prosecution had failed to give him notice of the warrant as required by CPL 700.50 (3). Although a written decision by Supreme Court on this issue is not extant, it appears clear from a later *Mapp/Dunaway* ruling that the court considered, but denied, defendant's request for suppression of the phone calls, without holding a hearing on the issue. In any case, no suppression motion was granted.

In October 2007, Cabrera entered into a cooperation agreement with the Office of the Special Narcotics Prosecutor. With respect to his August 1 arrest, Cabrera pleaded guilty to criminal sale of a controlled substance in the third degree. The prosecutor agreed to a reduced sentence of one year's imprisonment, to be served concurrently with Cabrera's federal sentence, if Cabrera testified truthfully at defendant's trial.

Shortly thereafter, defendant proceeded to a jury trial. Cabrera testified at length, against defendant. Six of eight intercepted calls were played for the jury, and transcripts of all the conversations were introduced into evidence. Detective Papadopoulos testified as well.

For his part, defendant placed Cabrera's cooperation agreement into evidence, and cross-examined Cabrera on it. Defendant did not testify or introduce witnesses. In summation, defense counsel argued that this was a case of mistaken

identity—defendant and "Rafi" were not the same person—and urged the jury not to credit Cabrera's testimony.

The jury found defendant guilty as charged. At sentencing, the prosecutor argued that only a trusted member of a narcotics organization could have obtained such a large amount of cocaine and recommended a 15-year prison sentence on the sale count. Defense counsel sought an eight-year term for that count, noting that defendant's criminal record was far less extensive than Cabrera's and that defendant had been offered five years' imprisonment in exchange for a guilty plea. Supreme Court sentenced defendant to concurrent terms of 17 years' imprisonment on the sale count and 5 to 15 years' imprisonment on the conspiracy count. Subsequently, Supreme Court imposed five years' postrelease supervision on defendant, doing so in his absence.

On appeal, defendant made several arguments, including the contentions that he should have been granted a suppression hearing in regard to the eavesdropping warrant issue, that his postrelease supervision term had been illegally imposed in his absence, and that his prison sentence was harsh and excessive. The Appellate Division rejected all defendant's claims, except the challenge to his postrelease supervision sentence, which the People conceded (77 AD3d 420 [2010]). That court held that suppression of wiretap evidence based on the prosecution's violation of CPL 700.50 (3) was not warranted without a showing of prejudice, and found that defendant failed to allege any prejudice and had a full opportunity to challenge the legality of the warrant when he received notice of it at his arraignment (77 AD3d at 421). The court modified and, as modified, affirmed Supreme Court's judgment, remitting the matter for the sole purpose of the imposition of a postrelease supervision term in defendant's presence.

A Judge of this Court granted defendant leave to appeal (15 NY3d 955 [2010]). We now affirm.

Pursuant to CPL 700.50 (3), written notice must be served upon a person who is named in an eavesdropping or video surveillance warrant, informing him or her "of the fact and date of the issuance of the . . . warrant, and of the period of authorized eavesdropping or video surveillance, and of the fact that during such period communications were or were not intercepted or observation [sic] were or were not made." The notice must be served "in no case later than ninety days after

termination" of the warrant (CPL 700.50 [3]). The warrant in the present case expired on August 19, 2005. There is no question that the prosecution's failure to notify defendant of the warrant until his arraignment on December 15 violated the statute.

CPL 700.50 (3) itself does not provide a sanction for its violation. However, under a sister provision, CPL 700.70, which requires the People to give a defendant who has been *arraigned* a copy of any eavesdropping warrant and accompanying application "within fifteen days after arraignment and before the commencement of the trial," the penalty for violation is suppression—"[t]he contents of any intercepted communication, or evidence derived therefrom, may not be received in evidence or otherwise disclosed upon a trial of [the] defendant" (CPL 700.70). Moreover, we have held that article 700 "requires scrupulous compliance . . . without such compliance State officials lack authority to wiretap, any interceptions they make are unlawful, and any evidence derived from the wiretap is inadmissible" (*People v Capolongo*, 85 NY2d 151, 159-160 [1995]). "[F]ailure to comply [with article 700] will generally result in suppression" (*People v Bialostok*, 80 NY2d 738, 747 [1993]). We thus agree with defendant that the penalty for a violation of CPL 700.50 (3) is, generally, suppression.

The more difficult question is whether a defendant must also show prejudice in order to win suppression under CPL 700.50 (3). As we have noted on more than one occasion, "[t]he purposes of the warrant notification requirement are to publicize wiretaps to the community at large and to those subjected to them and to assure defendants are able to challenge the legality of eavesdropping warrants in a timely manner" (*People v Bialostok*, 80 NY2d 738, 747-748 [1993], citing *People v Hueston*, 34 NY2d 116, 122 [1974]).

In *People v Hueston*, the defendant had actual notice of an eavesdropping warrant through a communication from a third person who had received notice of a phone tap in another jurisdiction; defendant did not receive any timely notice, formal or otherwise, from law enforcement sources. We held that "[w]here actual knowledge of the existence of the warrant is demonstrated within the time period allowed for notification by the prosecution, . . . formal written notification becomes a ministerial act, and the failure to so notify does not require suppression of evidence" (*Hueston*, 34 NY2d at 122). The purpose of the notification requirement of relevance to the defendant—ensuring the ability to challenge the legality of the warrant—was

clearly accomplished, as evidenced by a motion to suppress (*id.*). In *People v Bialostok*, we reaffirmed *Hueston*, holding that suppression was not required, where formal notice of a warrant was untimely but defendant knew through his attorney about the warrant and the nature of the investigation (*Bialostok*, 80 NY2d at 747).

*Hueston* and *Bialostok* stand for the principle that suppression is not required, despite the prosecution's violation of the terms of CPL 700.50 (3), when the defendant independently knew of an eavesdropping warrant within the prescribed time period. The rationale is that suppression is not justified where, despite the prosecution's lack of exact adherence to CPL 700.50 (3), the defendant is able to challenge the legality of the eavesdropping warrant in a timely fashion. This rationale implicitly rests on the premise that suppression should not be ordered for a CPL 700.50 (3) violation where there is no prejudice to the defendant.

With this precedent in mind, we make clear that prejudice must be shown in order for a defendant to prevail on a suppression motion under CPL 700.50 (3). The opposite view, which would suppress wiretap evidence for failure to give notice, even when that failure has absolutely no effect on the defendant, ignores the "commonsense balance between the rights of . . . defendant[s] and the needs of law enforcement" (*Bialostok*, 80 NY2d at 747) that we must always seek to strike. In reaching our decision, we find assurance in the sufficient protection of defendant's rights afforded by the sister provision, CPL 700.70, which provides for deadlines that are tied to the timeline of prosecution and trial, and which is generally "imposed without regard to the absence of prejudice to a defendant from the delay" (*Capolongo*, 85 NY2d at 166).

A defendant who relies on CPL 700.50 (3) because, having received pretrial notice within 15 days of arraignment, he cannot rely on CPL 700.70, must show that in some manner he nevertheless suffered prejudice. Here, defendant received notice at arraignment, in accordance with CPL 700.70. No prejudice resulting from the lack of prearraignment notice was shown. Accordingly, the lower courts properly denied suppression.

■ Defendant further contends that his trial counsel was ineffective, at his sentencing, because counsel failed to challenge the constitutionality of the sentence, in light of the disparity between the penalties suffered by defendant and Cabrera.

However, such a challenge would not have been "a winning argument" (*People v Turner*, 5 NY3d 476, 481 [2005]). In this case, "it cannot be inferred that appellant was punished or further penalized by the sentencing Justice because [he] pleaded not guilty and insisted upon [his] right to a trial" (*People v Jones*, 39 NY2d 694, 698 [1976]).

We have considered defendant's other arguments, both those argued by counsel and those raised pro se, and we conclude that they are without merit.

Accordingly, the order of the Appellate Division should be affirmed.

CIPARICK, J. (dissenting). Finding no basis for the majority's holding that "prejudice must be shown in order for a defendant to prevail on a suppression motion under CPL 700.50 (3)" (majority op at 173), I respectfully dissent and would hold that failure to allege prejudice is not fatal to defendant's motion.

CPL 700.50 is part of a larger statutory scheme that "exist[s] to safeguard rights protected by the Fourth Amendment" (*People v Greene*, 9 NY3d 277, 281 [2007]) and reflects "our strong public policy of protecting citizens against the insidiousness of electronic surveillance" (*People v Capolongo*, 85 NY2d 151, 160 [1995]). In light of that policy, we have "long recognized the importance of fidelity to the statutory directives that govern authorized eavesdropping," a practice we have deemed "singularly invasive" (*People v Darling*, 95 NY2d 530, 535 [2000]). Indeed, we have stated that without "scrupulous compliance with article 700 . . . any evidence derived from [a] wiretap is inadmissible" (*Capolongo*, 85 NY2d at 159-160; *see also People v Schulz*, 67 NY2d 144, 148 [1986] ["there must be strict compliance with the provisions of New York's eavesdropping statute (CPL art 700)"]; *People v Winograd*, 68 NY2d 383, 391 [1986]).

CPL 700.50 (3) provides:

> "Within a reasonable time, *but in no case later than ninety days after termination of an eavesdropping or video surveillance warrant*, or expiration of an extension order . . . written notice of the fact and date of the issuance of the eavesdropping or video surveillance warrant, and of the period of authorized eavesdropping or video surveillance, and of the fact that during such period communications were or were not intercepted or observation[s] were

or were not made, *must be served upon the person named in the warrant* and such other parties to the intercepted communications or subjects of the video surveillance as the justice may determine in his discretion is in the interest of justice" (emphasis added).

The purposes furthered by this mandatory notice requirement are twofold: "first, to publicize wiretaps to assure the community that eavesdropping techniques are reasonably employed . . . and, second, to allow defendants in criminal actions to test the legality of the warrants by making timely motions to suppress evidence" (*People v Hueston*, 34 NY2d 116, 122 [1974]). Although the statute does not prescribe a remedy for its violation, we have repeatedly stated that "failure to comply [with article 700] will generally result in suppression" (*People v Bialostok*, 80 NY2d 738, 747 [1993]; *see also Winograd*, 68 NY2d at 391).

We have recognized "limited exceptions," finding in *Hueston* and *Bialostok* that the People's noncompliance with section 700.50 (3) need not result in suppression where the defendant received actual notice that he was the target of an eavesdropping warrant within the prescribed 90-day period (*see Bialostok*, 80 NY2d at 747-748; *Hueston*, 34 NY2d at 121-122). Under those "special circumstances" (*Hueston*, 34 NY2d at 120), where statutory notice would simply be duplicative, apprising neither the defendant nor the public of any new information, suppression would not serve "any useful purpose" (*id.* at 122; *see Bialostok*, 80 NY2d at 747).

Here, by contrast, defendant received neither written notice under CPL 700.50 (3) nor actual notice within the statutory period. Nonetheless, the Appellate Division held that "defendant failed to allege any prejudice that would have warranted a hearing on his suppression argument that the People failed to comply with CPL 700.50 (3)" (*People v Rodriguez*, 77 AD3d 420, 421 [1st Dept 2010]). The majority holds today that suppression is unwarranted, finding that the rationale of *Hueston* and *Bialostok* "implicitly rests on the premise that suppression should not be ordered . . . where there is no prejudice to the defendant" (majority op at 173) and concluding that defendant has not met that burden (*id.* at 173). However, nothing in our two precedents indicates that where a defendant has not received posttermination notice in any form within the statutory period he or she is obligated to allege anything more to warrant a

hearing on the suppression of the intercepted communications. In fact, *Hueston* provides just the opposite, stating simply that "to suppress the evidence, a defendant must show a failure of notice" (34 NY2d at 120). Here, such failure exists as defendant was not advised of the eavesdropping warrant until his arraignment after the expiration of the statutorily mandated 90-day period.

In my view, critical to *Hueston* and *Bialostok* was not merely, as the majority contends, that the defendants were "able to challenge the legality of the eavesdropping warrant in a timely fashion" (majority op at 173), but that the government's surveillance activities came to light within the 90-day period that the Legislature has deemed reasonable. A rule that conditions suppression—perhaps the only truly effective means of fostering compliance with section 700.50 (3)—on a defendant's showing of prejudice ignores the fact that the statute's notification requirement is intended to inure not only to the benefit of defendants but also "to the community at large" (*Bialostok*, 80 NY2d at 748). In diluting the consequences of noncompliance, the majority's interpretation effectively "render[s] the timeliness requirement a nullity" (*People v Gallina*, 66 NY2d 52, 56 [1985]) and converts section 700.50 (3) into a discretionary notice provision.

Moreover, the majority's imposition of a prejudice pleading requirement is not only inconsistent with our most relevant precedent, but also with our treatment of other provisions of article 700. For example, in *Gallina*, we suppressed evidence obtained in violation of CPL 700.35 (2), requiring removal or "permanent inactivation" of any eavesdropping device upon expiration of a wiretap warrant (*see id.* at 54, 57). "That no unauthorized eavesdropping may have occurred [was] beside the point, because *it is the potential for abuse that is the focus of analysis*" (*id.* at 58 [emphasis added]).

An examination of our holding in *People v Marino* (49 NY2d 774 [1980]) further illustrates the incongruousness of the majority's rule. In *Marino*, we held that the defendant was not entitled to suppression of tapes obtained pursuant to a wiretap warrant as a result of the People's noncompliance with the issuing court's instruction to file interim progress reports during the pendency of the wiretap "at least in the absence of any demonstration of substantial prejudice to the defendant" (*id.* at 775). We noted that the statute at issue, CPL 700.50 (1), "does not itself require the filing of interim reports; rather it authorizes the issuing court to require such reports" (*id.*). Here,

however, the People's violation is not of a discretionary instruction but an express statutory directive. To impose the same showing of prejudice requirement under these disparate circumstances makes little sense and undermines our long commitment to strict enforcement of article 700.

We have never imposed a prejudice standard and I would not do so here. Today's holding minimizes the significance of statutory noncompliance. I would thus reverse the judgment and grant a new trial to be preceded by a suppression hearing on the CPL 700.50 (3) notice issue.

Judges GRAFFEO, READ, SMITH and JONES concur with Judge PIGOTT; Judge CIPARICK dissents in a separate opinion in which Chief Judge LIPPMAN concurs.

Order affirmed.